**Larry BROOKS et al., Plaintiffs-Appellees,**

v.

**AUBURN UNIVERSITY et al., Defendants-Appellants.**

**No. 27316.**

United States Court of Appeals Fifth Circuit.

July 8, 1969.

Thomas D. Samford, III, Samford & Samford, Opelika, Ala., and James J. Carter, Hill, Hill, Stovall, Carter & Franco, Montgomery, Ala., for appellants.

Morris Dees, Jr., Montgomery, Ala., C. H. Erskine Smith, Birmingham, Ala., for appellees.

Before BELL and GOLDBERG, Circuit Judges and ATKINS, District Judge.

BELL, Circuit Judge:

This appeal involves a decree of the district court restraining the president of Auburn University, Dr. Harry M. Philpott, from barring the scheduled appearance and speech on the Auburn campus of the Reverend William Sloan Coffin. The decree also required the payment to

Reverend Coffin of an agreed honorarium and travel expenses. We agree with the result reached by the district court and therefore affirm.

 The decree, entered on the complaint of plaintiffs who were students and members of the faculty at Auburn, rested on the premise that Dr. Philpott was denying them their First Amendment right to hear the speaker. The First Amendment, applicable to a state university through the Fourteenth Amendment, embraces the right to hear. Cf. Martin v. City of Struthers, 1943, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313; Lamont v. Postmaster General, 1965, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398.

The honorarium and expenses were within the range of the custom and practice in such instances at Auburn. The speaker was requested by a student organization, the Human Rights Forum, and the request was approved by the Public Affairs Seminar Board of the university. Dr. Philpott, in exercise of the final authority which was his as president of the university, ruled that the invitation could not be extended to Reverend Coffin and that his fee and expenses would not be paid.

The record demonstrates that Auburn had no rules or regulations governing speaker eligibility. The practice was for the Public Affairs Seminar Board, an officially chartered student-faculty board, to pass on requests from student groups to invite speakers. Funds were allocated to the Board by the university from student fees for use in obtaining speakers.[1] The Human Affairs Forum wrote the Board under date of November 13, 1968 requesting $650.00 needed for honorarium and expense purposes in bringing Reverend Coffin, Chaplain at Yale University, to Auburn for a speaking engagement on February 7, 1969. The Board, at a formal meeting on November 20, 1968, approved the request. The approval was communicated in writing to the chairman of the Human Affairs Forum by letter dated November 21, 1968.

Dr. Philpott then notified the Public Affairs Seminar Board that the Reverend Coffin would not be allowed to speak on the Auburn University campus because he was a convicted felon and because he might advocate breaking the law. These reasons had not previously been invoked at Auburn to bar a speaker.

 The district court was of the view that to invoke them under the circumstances here, where the speaker had been requested by a student organization and approved under normal procedures, was in the nature of a prior restraint and in violation of the First Amendment rights of plaintiffs. Cf. Kunz v. New York, 1951, 340 U.S. 290, 293, 71 S.Ct. 312, 95 L.Ed. 280. This holding is fairly sustained by the law and the evidence.

Attributing the highest good faith to Dr. Philpott in his action, it nevertheless is clear under the prior restraint doctrine that the right of the faculty and students to hear a speaker, selected as was the speaker here, cannot be left to the discretion of the university president on a pick and choose basis. As stated, Auburn had no rules or regulations as to who might or might not speak and thus no question of a compliance with or a departure from such rules or regulations is presented. This left the matter as a pure First Amendment question; hence the basis for prior restraint. Such a

---

1. Article II of the Constitution of the Public Affairs Seminar Board provides:
 "The purpose of this Board shall be to alocate funds to departments or groups for the presentation of seminars, conferences, individual lectures, or other activities which encourage the worthwhile discussion of Public Affairs."
 Membership on the Board consisted of three students holding designated campus offices plus three students to be named by the university president. In addition there were four faculty members to be appointed by department heads. The Director of University Relations is a permanent member of the Board. The Constitution also provides that the chairman of the Board will be one of the student members and that he will be appointed by the university president.

situation of no rules or regulations may be equated with a licensing system to speak or hear and this has been long prohibited. Cantwell v. Connecticut, 1940, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213.

▮ It is strenuously urged on behalf of Auburn that the president was authorized in any event to bar a convicted felon or one advocating lawlessness from the campus.[2] This again depends upon the right of the faculty and students to hear. We do not hold that Dr. Philpott could not bar a speaker under any circumstances. Here there was no claim that the Reverend Coffin's appearance would lead to violence or disorder or that the university would be otherwise disrupted. There is no claim that Dr. Philpott could not regulate the time or place of the speech or the manner in which it was to be delivered. The most recent statement of the applicable rule by the Supreme Court, perhaps its outer limits, is contained in the case of Brandenburg v. Ohio, decided June 9, 1969, 395 U.S. 444, 89 S.Ct. 1827, 23 L. Ed.2d 430:

" * * * These later decisions have fashioned the principle that the constitutional guarantees of free speech and free press do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to *inciting or producing imminent lawless action and is likely to incite or produce such action.* * * * "

See also Bond v. Floyd, 1966, 385 U.S. 116, 134, 87 S.Ct. 339, 17 L.Ed.2d 235. There was no claim that the Coffin speech would fall into the category of this exception.

One of the principal contentions before us is that the district court erred in stating that Dr. Philpott was guilty of blatant political censorship; that he was an arbitrary and unbridled censor; and that he practiced raw censorship. These references in the memorandum opinion of the district court were to a state of facts

which did not exist. Dr. Philpott's reasons for barring Reverend Coffin were not rules, and the guidelines in question had been formulated for discussion only. Thus it is clear that there were no rules or regulations before the district court for decision. Moreover, we are left with doubt that these references to censorship were attributed to Dr. Philpott by the district court. The entire opinion discussion in this regard was hypothetical and advisory in nature and our doubt stems from the fact that the references complained of, if directed to Dr. Philpott, would be without an evidentiary basis.

The responsibilities on courts and university presidents in the area of First Amendment rights is heavy indeed. Judge Godbold, in a special concurring opinion in Ferrell v. Dallas Independent School District, 5 Cir., 1968, 392 F.2d 697, 704, put it well when he said:

"A school may not stifle dissent because the subject matter is out of favor. Free expression is itself a vital part of the educational process. But in measuring the appropriateness and reasonableness of school regulations against the constitutional protections of the First and Fourteenth Amendments the courts must give full credence to the role and purposes of the schools and of the tools with which it is expected that they deal with their problems, and careful recognition to the differences between what are reasonable restraints in the classroom and what are reasonable restraints on the street corner."

And, as Judge Gewin said in writing for the court in Burnside v. Byars, 5 Cir., 1966, 363 F.2d 744, at 749:

" * * * [School officials] cannot infringe on their students' right[s] * * * as guaranteed to them under the First Amendment to the Constitution, where the exercise of such rights * * * do not materially and substantially interfere with the require-

2. Reverend Coffin's conviction was on appeal at the time but this fact does not bear on our decision.

ments of appropriate discipline in the operation of the school."

We find no departure from these teachings in the decree which forms the subject matter of this appeal.

Affirmed.