**Nancy JAMES and Elaine Sturgis, Plaintiffs,**

v.

**Richard NELSON, Defendant.**

**No. 72 C 2711.**

United States District Court, N. D. Illinois, E. D.

Oct. 30, 1972.

William I. Goldberg, Andrew J. Leahy, Chicago, Ill., for plaintiffs.

John J. Templin, DeKalb, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

McLAREN, District Judge.

This matter is now before the Court upon plaintiffs' motion for a temporary restraining order. The plaintiffs, one a student and one a non-student, allege that they are actively participating in the election campaign, but have been prevented, in violation of their First Amendment rights, from "canvassing" eligible voters in student dormitories at Northern Illinois University. A hearing was held in this matter on October 27, where both parties were represented.

At issue are two university regulations. The first, a standing rule in effect for some period of time, forbids "solicitation" of any kind on student living floors.

The second, entitled "Interim University Residence Hall Policy on Door-to-Door Political Canvassing" and dated October 23, 1972, was generated by requests for relaxation of the first rule after it was interpreted to apply to canvassing as well as commercial solicitation. This second regulation, which was to go into effect only after it was adopted by a two-thirds vote of the residents of each dormitory, after which individual floors could approve of it by a two-thirds vote, provides that canvassers must register and obtain a letter of authorization covering a specific time period; that male canvassers must be escorted in women's living areas; that canvassing is limited to the hours of 1:00 p. m. to 8:00 p. m.; that canvassers may not solicit contributions or attempt to advertise or sell any item; that "no canvassing" signs on students' doors and requests to leave must be honored; that no amplifying devices may be used; that certain areas are "off limits" to canvassing, and that violators may thereafter be excluded.

Although their complaint appears to read more broadly, plaintiffs contest only the two-thirds voting requirement of the canvassing regulation, urging that it has effectively prohibited canvassing and therefore unduly limits their constitutional rights to freedom of association and expression. The Court agrees and an order will issue restricting defendant from enforcing that portion of the October 23, 1972 policy statement which restricts canvassing to those residence halls adopting the policy. The Court emphasizes, however, that it does not find that, and indeed no challenge has been made that, the eight numbered conditions and restrictions set forth in that statement are in any way unreasonable or beyond the powers of the university administration to impose in the interests of good order and the safety and comfort of the student body.

As the Supreme Court recently noted, "colleges and universities are not enclaves immune from the sweep of the First Amendment." Healy v. James,

408 U.S. 169, 92 S.Ct. 2338, 2345, 33 L.Ed.2d 266 (1972). Nearly twenty years ago, Justice Black stated:

"For centuries it has been a common practice in this and other countries for persons not specifically invited to go from home to home and knock on doors or ring doorbells to communicate ideas to the occupants or to invite them to political, religious, or other kinds of public meetings. Whether such visiting shall be permitted has in general been deemed to depend upon the will of the individual master of each household, and not upon the determination of the community."

Martin v. City of Struthers, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943). In *Martin,* the Court struck down a city ordinance prohibiting such activities. Here, the university is in the position of the city, and the students are in the position of householders.

■ Of course, university officials may place reasonable restrictions upon the exercise of First Amendment rights, Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 507, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Sword v. Fox, 446 F.2d 1091, 1097 (4th Cir. 1971); Bayless v. Martine, 430 F.2d 873, 878 (5th Cir. 1970), and their right to do so in this case is recognized, as previously noted.

■ The representative of the university argued principally that the policy banning dormitory canvassing was intended to protect the residents' rights to privacy, and was put into effect because the elected student representatives of the dormitories approved of it. He noted that when the policy was submitted to residents for a vote, not one dormitory voted in favor of allowing canvassing. This case involves more, however, than the rights of those students who chose not to allow canvassing. Also to be considered are the rights of other residents to choose to hear the canvassers. The First Amendment embraces the right to hear as well as to speak.

Brooks v. Auburn University, 412 F.2d 1171, 1173 (5th Cir. 1969).

In *Healy, supra,* at 2346, the Court noted that its recognition of the need for university control of conduct on campus did not indicate that First Amendment protections should apply with less force on the campus than in the community at large; it noted further that denying the full range of associational activities to an organization constitutes a form of prior restraint, placing upon it a "heavy burden" of justification. *Id.* at 2348.

It might be argued that various alternative means are available to carry the issues to the students. Meetings, distribution of literature, and personal contacts in the public areas of the campus, including the lounges and lobbies of the dormitories, are permitted. But this does not justify the deprivation of what Justice Black recognized as one of the traditional methods of "canvassing." This is not a case involving demonstrations, the occupation of university property, or other circumstances where injury to persons or property is imminent or even foreseeable. The individual dormitory residents' rights to privacy in their rooms can be protected by "no canvassing" signs, or by simply telling canvassers to go away. Any threat to students' safety is covered by the registration provision of the policy.

■ All things considered, the Court finds that the university has not met the "heavy burden" of justifying the virtual ban which it has placed upon door-to-door political canvassing in the dormitories.

Plaintiffs, on the other hand, have met their burden of showing the strong probability of success on the merits. Because the facts upon which they base their claims to relief are essentially undisputed, they need not show that they will be irreparably harmed, Brass v. Hoberman, 295 F.Supp. 358, 361 (S.D. N.Y. 1968); it is clear that the prevention of the exercise of rights such as these may not later be remedied. That the balance of the hardships is in favor of the plaintiffs is clear from the discussion above of the interests of the plain-

tiffs, the university, and the students. Accordingly, a temporary restraining order consistent with the foregoing will issue forthwith.

It is so ordered.