**Eugene M. BAZAAR et al., Plaintiffs-Appellees,**

v.

**Porter FORTUNE et al., Defendants-Appellants.**

No. 72-2175.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1973.

Ainsworth, Circuit Judge, concurred in the result; Bell, Circuit Judge, filed a dissenting opinion in which Roney, Circuit Judge, joined.

Heber Ladner, Jr., A. F. Summer, Atty. Gen., State of Mississippi, Jackson, Miss., for defendants-appellants.

Bill Joyner, Harvard Law School, Cambridge, Mass., Stanley L. Taylor, Jr., Oxford, Miss., for plaintiffs-appellees.

Leonard Schwartz, Columbus, Ohio, for A. C. L. U. of Ohio Foundation.

Melvin L. Wulf, Joel M. Gora, New York City, for Amer. Civil Liberties Union Foundation.

Before BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, RONEY and GEE, Circuit Judges.

PER CURIAM:

Upon consideration of the record, briefs and oral argument in this cause en banc, the court concludes that the opinion and judgment of the panel should be and the same are hereby affirmed, subject to the following modification:

The defendants-appellants may, at their option, place or stamp on the cover or the format of the magazine *Images* the following disclaimer (*in haec verba*): "This is not an official publication of the University." [1]

Affirmed as modified.

1. The possibility of adding such a notation to the publication was suggested by the American Civil Liberties Union, Amicus Curiae, at page 6 of its brief on rehearing en banc.

AINSWORTH, Circuit Judge:

I concur in the result.

BELL, Circuit Judge, with whom RONEY, Circuit Judge, joins, dissenting:

I respectfully dissent. This is a curious case. The majority decision, despite the en banc allowance of a disclaimer to the University of Mississippi, portends a substantial diminution in the First Amendment right not to be compelled to sponsor the writing of another.

The suit underlying this appeal was brought by the students having charge of the student-English Department magazine *Images* and by the student author whose articles gave rise to the controversy. The faculty advisor to *Images* was later added as a plaintiff.

The complaint sought to enjoin the defendant officers of the university from violating plaintiffs' right to publish and distribute literary materials. The complaint was filed on May 15, 1972. There was an evidentiary hearing three days later on a motion for a temporary restraining order. The district court entered oral findings and conclusions immediately following the hearing and granted the restraining order. The appeal to this court was from that order. The order has been stayed in the interim.

It developed at the hearing that the particular edition of *Images* had been printed but was being held at the behest of the university. After some backing and filling on the part of the parties, it became clear that the university was not seeking to confiscate the edition as claimed nor was it seeking to prohibit private distribution. It was made plain that plaintiffs could distribute the issue as a private venture. The sole extant issue then and on appeal was the claim of the university that it should not be compelled to sponsor the publication and the opposite claim of plaintiffs that they were entitled to sponsorship.

The Chancellor of the university testified that his purpose in holding up publication was because he did not consider two stories in *Images* as appropriate for a university sponsored or endorsed publication. He pointed to the fact that *Images* was a product of the English Department of the university, and was comprised of student materials published with the advice of the department. This position of sponsorship was somewhat tenuous, public-wise, but the following language was carried on the foreword:

"Images is a student publication of the University of Mississippi, sponsored by the University of Mississippi Associated Student Body with the advice of the Department of English."

The issue was drawn by the testimony of the faculty advisor, a plaintiff:

"Q I was saying if the magazine should be circulated privately among a group of students, wouldn't your needs then be satisfied without university sponsorship?

A Not really, because the university would have taken the position that this is not a thing—this open expression and discussion and writing is not a thing that it approves of and would thereby have helped to influence the students, many students, and the state to think that this is wrong and would have been, it seems to me, exercising an adverse educational influence."

Unlike a student newspaper, it did appear that *Images* was an academic endeavor with its staff being selected by the faculty advisor and that he had a vote on all matters pertaining to the publication. If not essentially an undertaking of the English Department, it was at least a joint student-English Department publication. This nexus with the academic side as distinguished from the extra-curricular side of the university was the hinge on which the matter should have turned. Instead, the case was treated in the district court and

here as one of censorship and a violation of the open forum doctrine.[1]

The right of the university not to sponsor is in conflict with that of the plaintiffs to publish with sponsorship. The students have the right to publish and distribute *Images* on their own. The question was and is whether they have the right to require sponsorship by the university.[2]

The only discernible constitutional basis for compelling the university to sponsor *Images* over its objection is that the magazine had been approved as a student-English Department publication and that the few previous issues had been sponsored. At bottom, the argument is that the management of the magazine had been delegated to the students and the English Department advisor and thus the university could not refuse to sponsor it despite any objection as to its content.[3]

The district court stated that the constitution conferred upon the students in charge of *Images* freedom of speech and press but pointed to the few limitations upon those rights; e. g., the classic exceptions based on clear and present danger, disrupting or frustrating the functioning of the university, undue interference with the educational process, or where the writing or speech is obscene. Cf. Healey v. James, 408 U.S. 169, 92 S. Ct. 2338, 33 L.Ed.2d 226 (1972). The court then found prohibited censorship on the part of the university through the denial of its facilities to the student publication. The conclusion was that there was no difference between furnishing a forum for campus speech and providing facilities for a student publication. The claim of the university that it should not be compelled to be an unwilling sponsor was simply ignored. A panel of this court affirmed. Bazaar v. Fortune, 5 Cir., 1973, 476 F.2d 570. Now the court en banc has also affirmed.

It seems to me that the case has been only one-half decided. The conflict between the right of the university not to sponsor and the right of the students to publish with sponsorship is a very live issue. As stated, the decision in the censorship portion of the case was reached on the legal basis that the university printing facilities and a university meeting hall are one and the same from the First Amendment standpoint.[4] But, it is one thing to allow or compel the use of facilities on an equal basis once they have been opened; it is quite another to require sponsorship of writing or speech by a university. It is also quite another thing—and one step further—to require a university, by a federal court writ, to approve and sponsor the activities of one of its academic departments. This latter specter may well be in the case as a part of the sponsorship issue. The control retained in the Eng-

---

1. On the right of the students to be free from censorship in their publications, see Papish v. University of Missouri Curators, 410 U.S. 667, 93 S.Ct. 1197, 35 L.Ed.2d 618 (1973), and the cases cited in the panel opinion, Bazaar v. Fortune, 5 Cir., 1973, 476 F.2d 570 at 574–575. The open forum doctrine safeguards the First Amendment right to use university facilities on an equal basis for purposes of speech and hearing, once the forum is opened by the university. Brooks v. Auburn University, 5 Cir., 1969, 412 F.2d 1171.

2. The basic contention of the university that it could not be compelled to sponsor has yet to be considered except in the tangential way of the terse disclaimer allowed by the en banc court, to be discussed infra.

3. In the view I take of this case, the right not to sponsor does not depend on whether the literary materials are distasteful or are deemed inappropriate except perhaps to the extent of deciding whether the university was acting arbitrarily in withdrawing its sponsorship.

4. I use "sponsorship" in terms of endorsement or offering or distributing as a university product. The edition had been printed. The facts were not fully developed as to the arrangement for printing and there is no need to decide any question regarding the right to use the printing facilities of the university.

lish Department over *Images* is a matter that should be developed on remand. Under the simplistic approach to date, no consideration has been given to the role of the English Department—the premise has been that *Images* is strictly a student publication.

In short, only the student side of the case has been considered. Each side asserts constitutional rights and those rights should have been balanced. At the very least the district court and this court should have ruled on whether the university had a right not to sponsor. I do not know just what the answer would be if the university could have persuaded the district court or this court to consider its position. Assuming that the university had such a right, the district court, sitting as it was in equity, might have found a vehicle for preserving the right of the university as well as the right of the student plaintiffs.

It happens that this court has found one method of accommodating the separate rights, that of permitting the university to file a disclaimer. The en banc court seems to recognize that there is a right in the university not to be compelled to sponsor and, consequent thereto, has allowed the university to disclaim. It has done so, however, in a niggardly manner entirely out of keeping with First Amendment rights; it has written the disclaimer and required that it be used "*in haec verba*". In my judgment, such a restricted approach, without any explanation whatever, is in itself a disparagement and denigration of any right worthy of protection under the First Amendment.

It must again be recorded that this right of the university has not yet been litigated; there is not one line in the district court opinion or in the panel opinion in recognition of its existence. In a one sentence order, the en banc court restricts the right of disclaimer to its specific terminology.

I would vacate the temporary restraining order and remand the case for a full hearing on the issue of sponsorship and with the direction that the rights of the parties be balanced if under the facts as developed a right not to be compelled to sponsor is found. The constitutional rights involved are too important to be finally decided on the record of a hearing held for the purpose of considering only a motion for a temporary restraining order.

As is often the case, the rights of one group do not exist in a vacuum; they usually touch the rights of others. It is this touching of rights and the necessity to give the maximum possible protection to all rights that is fundamental to a free society. This constitutional truth is nowhere more applicable than in the university enclave which is at the heart of a free society. Our Constitution is diminished when a right is vindicated at the expense of denying the right of another in circumstances where the rights of each might be accommodated.

Mr. Hubbard, the author of the articles giving rise to this controversy, stated that the theme of one of the articles, "Autumn Evening", was the story of a young man experiencing frustration. His articles have turned out to be the impetus for a real world form of frustration in that his university has been unable to obtain consideration of what it deems to be a legitimate constitutional position. Its position has not been voted up or down. Believing that the university is due a reasoned ruling on its position before having a federal writ imposed upon it, I dissent.