## ADVOCATES FOR the ARTS et al.

### v.

## Meldrim THOMSON, Jr., Governor of the State of New Hampshire, et al.

### Civ. A. No. 75–97.

United States District Court,
D. New Hampshire.

July 18, 1975.

---

Howard B. Myers, Ingram & Myers, Hanover, N. H., for plaintiffs.

Edward A. Haffer, Asst. Atty. Gen. of N. H., Concord, N. H., for defendants.

## MEMORANDUM OPINION ·

BOWNES, District Judge.

Plaintiffs bring suit to 'enjoin the Governor and Executive Council of the State of New Hampshire from allegedly interfering with and denying them their rights secured by the First Amendment to the United States Constitution. Jurisdiction is pursuant to 28 U.S.C. § 1331.

Plaintiffs are: Advocates for the Arts (Advocates), a nonprofit organization concerned with the promotion of the arts; Granite Publications, Inc., a nonprofit corporation which is the publisher of Granite Magazine; Rosellen Brown, a writer whose works have appeared in Granite Magazine; Douglas K. Morse, a teacher and member of Advocates for the Arts; and Vera Vance, a contributor to Granite Magazine and a member of Advocates for the Arts.

Defendants move that, with the exception of Granite, the other named plain-

tiffs lack standing to sue due to their inability to allege a judicially cognizable injury.

■ The First Amendment protects not only the right to speak, but also the right to hear and receive information. *Stanley* v. *Georgia*, 394 U.S. 557, 89 S. Ct. 1243, 22 L.Ed.2d 542 (1969); *Griswold* v. *Connecticut*, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 50 (1965); *Lamont* v. *Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965).

Plaintiffs have not proceeded pursuant to the Administrative Procedure Act, 5 U.S.C. § 702. Accordingly, they must establish that they have a "personal stake in the outcome of the controversy . . . ." *Baker* v. *Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); *Sierra Club* v. *Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

Plaintiffs Brown and Vance allege that, as a consequence of defendants' action, they have been denied the right to publish their works in Granite Magazine. Plaintiff Granite alleges that, as a result of defendants' action, it was forced to curtail publication and distribution and that the restraint on publication has affected the rights of others to read and receive the magazine.

■ Plaintiffs Vance and Brown have a constitutional right to publish their works without any impermissible governmental interference and an allegation that the defendants have deprived them of their right to freely publish gives them a direct stake in the controversy and, therefore, standing to sue.

■ Plaintiffs Advocates and Morse stand on different footing. Morse has not alleged that he either writes for Granite or that he reads it. He attempts to assert the requisite degree of interest by being a member of Advocates. Plaintiff Advocates, on the other hand, has failed to assert that any of its members read Granite or subscribe to its publication; its sole allegation of harm is that Ms. Vance, who is a con-

tributor to the magazine, is also a member of its organization.

The Supreme Court has held that even where an organization has had a long and involved "historical commitment" to the "public interest," this factor, standing alone, is insufficient to establish the requisite degree of harm. *Sierra Club* v. *Morton, supra.* The Court held that, although "an organization whose members are injured may represent those members in a proceeding for judicial review," it is essential for the organization to allege that it or its members are being adversely affected by the defendants' actions. *Id.* at 735 and 739, 92 S. Ct. at 1368. *See also Warth* v. *Seldin*, —— U.S. ——, 95 S.Ct. 2197, 45 L.Ed.2d 343 (June 25, 1975); *Ex parte Levitt*, 302 U.S. 633, 58 S.Ct. 1, 82 L.Ed. 493 (1937); *Fairchild* v. *Hughes*, 258 U.S. 126, 42 S.Ct. 274, 66 L.Ed. 499 (1922).

■ Because this suit involves First Amendment freedoms, the standing to sue requirement should not be rigidly enforced. *Smith* v. *Goguen*, 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Coates v. City of Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). *See generally*, Sedler, Standing to Assert Constitutional Jus Tertii in the Supreme Court, 71 Yale L. J. 599 (1962). The interesting question of whether Ms. Vance's status provides Advocates with a sufficient interest in the suit, thereby enabling it to circumvent the holding in *Sierra Club*, need not be decided. I find that, liberally construing the complaint, all parties have standing to maintain this action and I will treat the plaintiffs as one for purposes of this opinion.

### FACTS

The facts of this case are not in dispute. Granite Magazine is a journal of poetry, fiction, and other literary writings. In order to sustain itself during inflationary times, Granite applied to the New Hampshire Commission on the Arts (Commission) for federal grant-in-aid assistance. On July 29, 1972, the

Commission determined that Granite merited financial support and voted it a grant of $950. This award was approved by the Governor and Council and payment was subsequently made to Granite.

On October 11, 1973, Granite, still in need of funds, applied to the Commission for a second grant totalling $1,000. The Commission, once again, found that Granite deserved its support and made an award of $750. On March 4, 1974, a contract of obligation was signed between the Commission and Granite and forwarded to the Governor and Council.

On May 1, 1974, the Governor and Council held a meeting at which the Granite contract was approved. Shortly after the meeting had adjourned, the defendants were shown a poem, entitled "Castrating the Cat," which had appeared in a previous Granite issue. A reading of the poem convinced the defendants that Granite was not worthy of State assistance. The Council meeting was, therefore, reconvened and Granite's contract of entitlement was revoked. Granite has not received any portion of the second $750 grant.

Plaintiffs allege that the defendants' revocation of the grant contract impermissibly interferes with their First Amendment freedoms and that it was an abuse of governmental power, rising to censorship, for the defendants to refuse to honor the Commission's recommendation.

Although plaintiffs forcibly argue that First Amendment considerations control this case, I take a more pedestrian view and rule that it involves a question of statutory interpretation.

The issue is whether the Governor and Council have the power and authority to refuse to approve an art grant, which has been sanctioned by the Commission, solely because they believe the publication not to be artistically or culturally meritorious. I find that they do and defendants' motion to dismiss is granted.

## THE GRANT SYSTEM

Congress, in 1965, recognizing the reality of the allegorical starving artist, established a National Foundation of the Arts and the Humanities. 20 U.S.C. § 951 *et seq.* In its declaration of purpose, Congress proposed that:

> while no government can call a great artist or scholar into existence, it is necessary and appropriate for the Federal Government to help create and sustain not only a climate encouraging freedom of thought, imagination, and inquiry but also the material conditions facilitating the release of this creative talent. 20 U.S.C. § 951(5).

In order to effectuate the administration of the Act, Congress established the National Endowment for the Arts (NEA). 20 U.S.C. § 954. In NEA was vested the statutory responsibility for carrying out a program of grants-in-aid to the various states. 20 U.S.C. § 954(g)(2).

In order to effectuate its mandate, NEA awards bloc grants to responsible state art agencies which, in turn, administer these funds to meritorious individuals or groups within the state, in accordance with the terms and goals of the Act. Pursuant to the federal statutory scheme, the New Hampshire Legislature established the New Hampshire Commission on the Arts. NH RSA 19–A:1 *et seq.* The federal bloc grants are made payable to the Commission where they are then deposited in the State treasury until disbursement. In order to be released from the State treasury, the Governor must issue a warrant authorizing disbursement. NH RSA 4:15.

Applications for section 954(g) funds are first made to the Commission. It is the Commission's statutory responsibility to determine which of the many applicants are entitled to financial support. In order to receive the Commission's support, it must be found that the project has "substantial artistic and cultural significance, giving emphasis to Ameri-

can creativity." Once the Commission finds a project to be artistically meritorious, it is empowered to execute a contract or memorandum of agreement with the successful applicant. NH RSA 19–A:6. This contract of agreement is then forwarded to the Governor and Council where it must receive final approval so that a warrant can issue to the State treasury authorizing the release of the earmarked funds. The question is whether the Governor and Council may overrule the Commission and determine that a publication does not have significant artistic or cultural merit.

### THE LAW

*First Amendment*

This appears to be a case of first impression.

Plaintiffs' counsel admitted at the hearing that in the area of "art" subsidation, some administrative body must be given ample discretionary powers. Indeed, it is clear that, if the Commission had denied plaintiffs' application on the ground that Granite Magazine contained obscene matter, this action would not raise any constitutional questions.

■ Neither the state nor the federal government may burden a public grant or benefit with conditions "whatever their purpose, as to inhibit or deter the exercise of First Amendment freedoms." *Sherbert* v. *Verner*, 374 U.S. 398, 405, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963). *See also Perry* v. *Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

The danger that the Government may, through the administration of social benefits, regulate freedom of expression and thought is one of critical significance in our society and deserves close judicial scrutiny. *See Emerson*, The System of Freedom of Expression at 192–204 (1970). To vest unbridled discretion in any governmental office is an anathema to our political and social system which is founded on the concept of checks and balances. I must recognize that Governors, and even Presidents, do not always adhere to the rule of law. *Train* v. *City of New York*, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975); *Opinion of the Justices*, 113 N.H. 141, 305 A.2d 752 (1973).

■ But this case is *sui generis*. The administration of the grants-in-aid program, by its very nature, necessitates an administrative finding that the project has "substantial artistic and cultural significance." 20 U.S.C. § 954(c)(1). The determination whether Granite is entitled to the benefit can only be made by examining the contents of its publication and a subsequent value judgment as to its literary worth. This determination is intrinsic to the benefit being sought. And, while it is true that Granite is being denied the grant because of its content, this fact, standing alone, does not create an abridgement of the First Amendment. If plaintiffs had alleged that the defendants had denied the grant because they had signed their names to a peace petition or had supported the boycott of Gallo wine, then a palpable First Amendment claim would be made. The essential distinction is that the activity engaged in is extrinsic to the benefit being sought and has no reasonable relation to whether the applicant is entitled to its award. *Perry, supra*, 408 U.S. at 597, 92 S.Ct. 2694. *See also Joyner* v. *Whiting*, 477 F.2d 456 (4th Cir. 1973); *Brooks* v. *Auburn University*, 412 F.2d 1171 (5th Cir. 1969).

There has been no allegation that the defendants have prevented plaintiffs from publishing Granite with their own private funds; nor has there been any allegation that the New Hampshire Attorney General, or his agents, have threatened plaintiffs with criminal prosecution. NH RSA 650:2 (Supp.1973). The only action taken by the defendants is their refusal to sanction the grant because, in their judgment, they do not believe the magazine worthy of State support.

The thrust of plaintiffs' position is that once the Commission has determined the merits of the grant, the Governor and Council have neither the right nor the authority to reverse the decision and veto the grant. In essence, they want the Governor and Council to give rubber stamp approval to all determinations made by the Commission.

Based on the foregoing, I find that this suit does not involve any First Amendment claims and I, therefore, address myself to the statutory issue.

### STATUTORY CLAIM

20 U.S.C. § 954(g)(2) provides:

In order to receive assistance under this subsection in any fiscal year, a State shall submit an application for such grants at such time as shall be specified by the Chairman and accompany such application with a plan which the Chairman finds—

(A) designates or provides for the establishment of a State agency (hereinafter in this section referred to as the "State agency") as the sole agency for the administration of the State plan, except that in the case of the District of Columbia the Recreation Board, or any successor designated for the purpose of this chapter by the Commissioner of the District of Columbia, shall be the "State agency";

(B) provides that funds paid to the State under this subsection will be expended solely on projects and productions approved by the State agency which carry out one or more of the objectives of subsection (c) of this section; and

\*    \*    \*    \*    \*    \*

This subsection provides a statutory framework by which grant funds are to be disbursed to deserving applicants. Nowhere in the statute is there any in-dication that the State agency's determination of merit is to be final and binding. Instead, the procedure requires that the Commission initially sift through the numerous applications determining which ones are artistically meritorious and, therefore, deserving of statutory aid. It is essential for any applicant to first receive the Commission's approval before it can obtain grant funds.

It is important to note that, in section 954(g)(2)(A), Congress mandated that the State art agency is to be "the sole agency for the administration of the State plan." In subparagraph (B), which relates to the disbursement of funds, Congress deleted the requirement that the State art agency be the "sole" determining body.

In conjunction with this observation, it is important to note that New Hampshire law requires the Governor and Council to approve all appropriations[1] made by State agencies. NH RSA 4:15. In addition, New Hampshire Const. Pt. 2, Art. 56, provides:

No moneys shall be issued out of the treasury of this state, and disposed of, . . . but by warrant under the hand of the governor for the time being, by and with the advice and consent of the council, for the necessary support and defense of this state, . . . .

I hold that, under New Hampshire law, section 954(g) funds may be expended only on those projects which have received the initial approval of the Commission and the subsequent approval of the Governor and Council. While the defendants are not "widely known for their professional competence and experience in connection with the performing and fine arts," NH RSA 19–A:2, they still have the discretionary power to refuse to disburse funds to a project be-

---

1. I note that the question of whether the 954(g) funds remain federal funds while they are in the State treasury was not raised by the parties, and I do not believe it to be determinative of the issue presented.

cause they do not find it to be artistically deserving.

Defendants' motion to dismiss is granted.

So ordered.