### Gertrude BARNSTONE

v.

The **UNIVERSITY OF HOUSTON, KUHT–TV, Patrick J. Nicholson, in his Individual and Representative Capacity as University of Houston Systems Vice President.**

Civ. A. No. H–80–1048.

United States District Court,
S. D. Texas,
Houston Division.

May 12, 1980.

**1348**

David H. Berg, David H. Berg & Associates, Houston, Tex., for plaintiff.

Gregory Wilson, Asst. Atty. Gen., Austin, Tex., Pat Bailey, Houston, Tex., for defendants.

### SUPPLEMENTAL MEMORANDUM AND ORDER

McDONALD, District Judge.

Came on to be heard plaintiff's Motion for a Temporary Restraining Order requesting this Court to compel the defendants pursuant to Rule 65(b) of the Federal Rules of Civil Procedure to telecast the Public Broadcasting System (PBS) program, "The Death of a Princess," on May 12, 1980 at 8:00 p. m. A hearing held on the motion consumed the entire day of May 9, 1980, and all parties were present and represented by counsel. After hearing testimony from several witnesses and oral arguments of counsel, the Court entered an Order that same day granting the plaintiff's Motion for a Temporary Restraining Order. The Court now enters this Supplemental Memorandum and Order in which it details the basis for its conclusion that the requested TRO should be issued.

The plaintiff, Gertrude Barnstone, is a subscriber of defendant KUHT–TV and a regular viewer of its programs. KUHT–TV is owned and operated by the University of Houston, a state-supported educational institution. Plaintiff contends that she desires to see "The Death of a Princess," a documentary recreation of the events surrounding the execution of a Saudi Arabian princess and her lover by the Saudi Arabian government. Although KUHT–TV as a member of PBS usually televises PBS' international affairs series called "World," KUHT–TV announced on May 1, 1980 that it would not air the May 12, 1980 "World" program, "The Death of a Princess." This decision was based largely upon the objections raised by the government of Saudi Arabia. Notwithstanding, "The Death of a Princess" will be aired May 12, 1980, by several hundred PBS stations across the country in cities other than Houston.

The defendants initially maintain that the plaintiff has no standing to bring this action since she is not the producer of "The Death of a Princess" and has only the interests of a viewer/subscriber. However, courts have consistently held that implicit in the First Amendment guarantee of the right to speak is the right to hear. *Lamont v. Postmaster General*, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); *Brooks v. Auburn University*, 412 F.2d 1171 (5th Cir. 1969). As the Supreme Court stated in assessing the First Amendment interests within the electronic media, "[i]t is the right of the viewers and listeners, not the right of the broadcasters, which is paramount." *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 390, 89 S.Ct. 1794, 1806, 23 L.Ed.2d 371 (1969). In light of

these decisions, the Court finds that the plaintiff has standing to bring this action.

■ The defendants next contend that the plaintiff has not demonstrated that she is entitled to injunctive relief. In order to obtain injunctive relief, the plaintiff must show 1) a substantial likelihood of success on the merits; 2) a substantial threat of irreparable injury; 3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may do to the defendants; and 4) that the granting of the injunction will serve the public interest. *See Buchanan v. United States Postal Service,* 508 F.2d 259, 266 (5th Cir. 1975); *Allison v. Froehlke,* 470 F.2d 1123, 1126 (5th Cir. 1972); and 11 *Wright & Miller, Federal Practice and Procedure,* § 2948. The Court finds, for the following reasons, that these factors have been met.

As stated above, KUHT–TV is owned and operated by the University of Houston, a state-supported educational institution. Programming decisions at KUHT–TV are normally made by the Director of Programming, Virginia E. Mampre, after consulting with the General Manager, James Bauer, and Patrick Nicholson, Vice President of University Relations for the University of Houston, without any set guidelines. However, Mampre testified that the first decision in seventeen years to "ax" a show offered by the PBS network to KUHT–TV was made not by her but solely by Nicholson. Nicholson testified that he has complete authority to cancel a scheduled program for any reason, subject only to review by the president of the University. Since in this instance, the University of Houston president was informed of the decision only after it was made, it is clear that the final decision not to show "The Death of a Princess" was made within the sole discretion of Nicholson.

Nicholson testified that the basis of his decision was his determination that the national interest would be better protected by the cancellation of this controversial show. The problems of the United States in the Middle East, in general, and in Saudi Ara-

bia, in particular, would, in the judgment of Nicholson, only be exacerbated by the showing of this film. In his press release of May 1, 1980, Nicholson cited the objections of the Saudi Arabian government as one of the main reasons for cancelling "The Death of a Princess."

> Dr. Nicholson cited as a central issue "strong and understandable objections by the government of Saudi Arabia at a time when the mounting crisis in the Middle East, our long friendship with the Saudi government and U.S. national interests all point to the need to avoid exacerbating the situation."

Nicholson concluded that, in his estimation, the current political climate made the "timing" of this film inappropriate, and that while he would consider showing it at a future date he could not state for certain that KUHT–TV would ever show "The Death of a Princess."

■ This is not a case of a privately-owned-and-operated TV station making programming decisions. KUHT–TV is owned and operated by the University of Houston. The defendants argue that the government, this Court, is not to be involved in programming decisions. But here the government, the University of Houston, already is involved in the programming decision. It was the government, the University of Houston, which decided not to program "The Death of a Princess." That decision was based on the political beliefs of its Vice President, Dr. Nicholson. When the government gets involved in broadcasting, it has an obligation, at a minimum, to establish procedures that assure that programming decisions are not based on the political beliefs of its programmers and are not made arbitrarily or without due process of law. The programming decisions of state-owned-and-operated TV stations cannot be based on constitutionally impermissible reasons.

The Supreme Court in *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975), struck down a similar decision by governmental

officials where it found constitutionally required minimum procedural safeguards lacking. In *Conrad*, a municipal board charged with managing a city-leased theatre rejected an application to perform the rock musical "Hair" on the basis of outside reports from which it concluded that the production would not be "in the best interest of the community." The Court, without reaching the merits of the municipal board's decision, held the decision violated the First Amendment since it was implemented without the appropriate and necessary procedural safeguards. Similarly, the University of Houston in this case lacked the necessary procedural safeguards in failing to provide established guidelines for programming decisions and allowing one official the unbridled discretion to program on the basis of his political beliefs.

■ Having found that the plaintiff has a substantial likelihood of establishing her case on the merits, the Court now directs its attention to the requirements of irreparable harm and the balancing of interests. The plaintiff has clearly established that she will suffer irreparable harm if she shows, as well as can be shown at a preliminary hearing, that she has been denied a constitutional right. It has been widely held that the deprivation of a constitutional right constitutes irreparable injury. *See Planned Parenthood v. Citizens for Community Action*, 558 F.2d 861, 867 (8th Cir. 1977); *Keefe v. Geanakos*, 418 F.2d 359 (1st Cir. 1969); *Henry v. Greenville Airport Commission*, 284 F.2d 631, 633 (4th Cir. 1960); and *Wright and Miller, supra.* The injury is even more apparent where important First Amendment rights are involved. *A Quaker Action Group v. Hickel*, 421 F.2d 1111, 1116 (D.C.Cir. 1969); and *Llewelyn v. Oakland County Prosecutor's Office*, 402 F.Supp. 1379 (D.C.Mich.1975). Since the plaintiff has established a substantial likelihood of proving that her First Amendment rights have been violated, the Court finds that the plaintiff faces irreparable injury if the defendants are not ordered to air "The Death of a Princess" as previously scheduled on May 12, 1980 at 8:00 p. m.

The defendants respond that they will suffer the greater harm if required to air the film at the originally scheduled time and that, in comparison, the injury to the plaintiff in delaying the broadcast after a full hearing on the merits is minimal. The Court finds, however, that the injury caused by the violation of the plaintiff's constitutional rights would be no less acute if the broadcast were delayed. The plaintiff testified that if she is not able to view "The Death of a Princess" at its regularly scheduled time she would be denied the important give and take of discussions with friends around the country who have viewed the film on May 12, 1980. Pitted against these concerns, the defendants' allegation of harm resulting from a court enforced prohibition of politically-based programming decisions is clearly outweighed.

■ The defendants further argue that they should be allowed to tape the show on May 12, 1980, so that it could be shown, if so ordered by the Court, at a later date. A deprivation of the First Amendment, however, will not be countenanced for any period of time. As the Supreme Court said in *New York Times Company v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971), "[A]ny system of prior restraints of expression comes to this Court bearing a heavy presumption against its constitutional validity." . . . "[A]nd therefore, every restraint issued in this case, whatever its form, has violated the First Amendment—*and not less so because that restraint was justified as necessary to afford the courts an opportunity to examine the claim more thoroughly.*" *Id.* at 727, 91 S.Ct. at 2148 (Brennan, J., concurring). (Emphasis supplied)

With respect to the fourth criterion for obtaining injunctive relief—a showing that the injunction is in the public interest—the Court finds that the plaintiff has amply demonstrated that the public interest would not be disserved by the broadcast of this film. The Court notes the legion of other PBS stations around the country which will be airing "The Death of a Princess" at the regularly scheduled date and finds that no

threat of harm has been shown to exist in those communities. The Court concludes that no greater harm will befall the members of this community if the show is aired in Houston.

Consequently, it is hereby ORDERED, ADJUDGED, and DECREED that plaintiff's Motion for a Temporary Restraining Order is GRANTED. The defendants are hereby directed to air "The Death of a Princess," as previously scheduled, on May 12, 1980, at 8:00 p. m.