**AMERICAN COUNCIL OF THE BLIND, et al., Plaintiffs,**

v.

**Daniel J. BOORSTIN, Librarian of Congress, Defendant.**

**Civ. A. No. 85–3836.**

United States District Court, District of Columbia.

Sept. 23, 1986.

Bruce J. Ennis, Jr., David W. Ogden, Ennis, Friedman & Bersoff, Washington, D.C., for plaintiffs.

Hermes Fernandez, U.S. Dept. of Justice, Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

THOMAS F. HOGAN, District Judge.

This written opinion supplements the Court's opinion issued from the bench on August 28, 1986 at the conclusion of oral argument on the parties' cross-motions for summary judgment. Upon review of the parties' memoranda, supporting exhibits and oral argument, the Court ruled for the plaintiffs, holding that the defendant violated the First Amendment when he made a view-point-based decision to discontinue the production and distribution of braille editions of *Playboy* magazine.

The Court reserved judgment on the relief to be accorded plaintiffs. At the request of the Court the parties submitted proposed orders of relief. Plaintiffs seek a declaration that defendant violated the First Amendment by eliminating *Playboy*

from the braille program and an order directing the Librarian of Congress to: (1) resume production and distribution of braille editions of *Playboy;* (2) produce for archival purposes recorded versions of the 1986 issues of *Playboy* magazine; (3) notify all persons and libraries of the renewed availability of braille editions of *Playboy;* and (4) continue to produce monthly braille editions of *Playboy* unless content-neutral standards are applied to decisions regarding the inclusion of *Playboy* in the program. Defendants do not object to the proposed relief except with respect to the last item. Defendants suggest that the Court order the Librarian to reconsider his decision based on a content-neutral standard.

### I. *Findings of Fact*

The Library of Congress through the National Library Service's Program for the Blind and Physically Handicapped reproduces books and magazines in braille and recorded editions for blind and visually impaired individuals. 2 U.S.C. § 135, et seq. The National Library Service (NLS) staff, using specific criteria and procedures, selects materials for inclusion in the braille program. To aid in the selection process, the NLS established advisory committees representing the interests of readers, network libraries and groups such as the American Council for the Blind and the Blinded Veterans Association. Pltf. Stmt. of Material Facts Exh. C. The Librarian of Congress maintains ultimate authority over all programs administered by the NLS and Library of Congress. Def. Response to Interrogatories 7, 8.

From 1973 until 1985 the program published the textual portions of *Playboy* magazine in braille. Pltf. Stmt. of Material Facts Exh. H. Pictures and cartoons were not included in the program's editions due to the difficulty of reproducing them in braille. *Playboy* was one of the most popular magazines in the program. Pltf. Stmt. of Material Facts Exh. E.

The controversy over *Playboy's* inclusion in the braille program began in March 1981 when Representative Chalmers Wiley requested defendant Boorstin, the Librarian of Congress, to discontinue producing and distributing free copies of braille editions of *Playboy.* Pltf. Stmt. of Material Facts Exh. E. The NLS, in response to the Congressman's request, reviewed the program's selection criteria and concluded that the Library's Program for the Blind and Physically Handicapped should continue to publish *Playboy* in braille. Pltf. Stmt. of Material Facts Exh. G. Prompted by Representative Wiley, a second internal review by NLS occurred in November and December, 1981 to reevaluate whether *Playboy* should remain available to subscribers. Noting that in 1980 *Playboy* "surpassed *Good Housekeeping* and *Ladies Home Journal* in circulation," and that it fell "within the criteria for selection of periodicals," the NLS again concluded that the Library could not justify removing *Playboy* from the program. Pltf. Stmt. of Material Facts Exh. H.

In July 1985 Representative Wiley, having failed to persuade the Library of Congress to stop producing *Playboy* in braille, introduced an amendment to the House Appropriations Bill to reduce the funding for the Library of Congress' Books for the Blind and Physically Handicapped Program from $33,864,000 to $33,761,000. 131 Cong.Rec. H5932 (July 18, 1985). The reduction of $103,000 represents the Library's cost of reproducing *Playboy* in braille.

In introducing the amendment, Representative Wiley clearly set forth his reasons for decreasing the amount of money available to the program. He stated:

> I do not think the public should be left with the impression that the Federal Government sanctions the promotion of sex-oriented magazines such as *Playboy.* I have asked the Library of Congress to stop using money to reproduce *Playboy* in braille. They have not stopped using the money for this purpose, and so I am offering this amendment today.

131 Cong.Rec. H5932 (July 18, 1985). The language of the amendment, as proposed

by Representative Wiley and as passed by the House of Representatives and the Senate, does not refer to *Playboy* nor prohibit the production of any magazine in braille. On July 18, 1985, after the House vote, defendant Boorstin issued a public statement announcing his decision to discontinue the production of braille editions of *Playboy.*

The only possible disputed material fact in this action is defendant's reason for deleting *Playboy* from the braille program. Defendant, in a public statement, explained that while he regretted his decision, he interpreted the Wiley amendment as precluding him from continuing to produce and distribute braille editions of *Playboy.* Complaint Exh. A. Boorstin viewed the House floor debate (his "sense of Congress") as a signal from Congress that *Playboy* could no longer be included in the program because of the nature of its contents. Defendant, referring to the reduced funding as a form of censorship, stated that "the next step might be to deny funds to the Library of Congress for purchasing of books which the House deemed inappropriate, subversive, or unacceptable to the majority of the House." Complaint Exh. A.

Although at oral argument and in later filings defendant attempted to rejustify his decision by suggesting that he removed *Playboy* from the program to protect the continued viability of the braille magazine program, Def. Opp. at 23, such ad hoc post rationalization does not furnish a contested issue of material fact, but rather the Court finds the plaintiffs' characterization of defendant's action as viewpoint-discrimination more accurate. Based on the oral arguments, the numerous memoranda and exhibits, including Boorstin's deposition, it is evident that the sole reason defendant eliminated *Playboy* from the braille program was because he adopted, albeit reluctantly, Representative Wiley's view that the inclusion of *Playboy* in the program was inappropriate given the sexual orientation of the magazine.

## II. *Conclusions of Law*

Summary judgment is appropriate when there are no genuine issues of material fact, such that movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court recently clarified the role of summary judgment in litigation, stating:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

*Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, courts must approach summary judgment motions with an even hand, evaluating all concrete evidence provided, and drawing all inferences in favor of the party opposing the motion.

### *Sovereign Immunity Claim*

Defendant alleges that the doctrine of sovereign immunity bars plaintiffs' action as he is a federal official sued in his official capacity. This Circuit, however, noted in *Clark v. Library of Congress,* 750 F.2d 89, 102 (D.C.Cir.1984), that "it is well established that sovereign immunity does not bar suits for specific relief against government officials where the challenged actions of the officials are alleged to be unconstitutional or beyond statutory power." In *Clark* a book reshelver at the Library of Congress brought suit directly against the Librarian on First Amendment claims. The court held that sovereign immunity did not bar non-monetary relief but did prevent recovery of compensatory and punitive damages. *Id.* at 102–104.

The case at bar is analogous to *Clark* to the extent plaintiffs are seeking specific non-monetary relief in the form of a declaratory judgment on the unconstitutionality of defendant Boorstin's actions. Therefore, plaintiffs may bring suit direct-

ly against the defendant based on the claim that he exceeded his authority by unconstitutionally removing *Playboy* from the braille program.[1]

### First Amendment Claim

The Supreme Court has consistently held that under the First Amendment the government may not discriminate against or proscribe constitutionally protected speech based on its content or viewpoint.[2] *See e.g. Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). The Supreme Court emphasizes that "above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter or its content." *Id.* at 95, 92 S.Ct. at 2289.

All parties agree that the statute appropriating funds to the National Program for the Blind and Physically Handicapped is constitutional on its face. No reference to *Playboy* or to any magazine is made. It is in defendant's application of the budgetary cut that the constitutional claim arises.

■ Defendant first argues that the Library of Congress is under no obligation to subsidize the production of braille editions of *Playboy* and, therefore, the Librarian's action "is not tantamount to a decision to suppress Playboy." Def. Opp. at 11. In *Regan v. Taxation With Representation of Washington*, 461 U.S. 540, 549, 103 S.Ct. 1997, 2002, 76 L.Ed.2d 129 (1983), the Supreme Court noted that it is a matter of Congressional policy and discretion whom to subsidize. Although individuals have no

right to a government subsidy or benefit, once one is conferred, as it is here through the allocation of funds for the program, the government cannot deny it on a basis that impinges on freedom of speech. *See e.g., Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972); *Big Mama Rag, Inc. v. U.S.*, 631 F.2d 1030, 1034 (D.C.Cir.1980).

■ When Congress established a subsidy program for braille editions of books and magazines, it created a nonpublic forum for the communication of ideas.[3] *See e.g. Cornelius v. NAACP Legal Defense and Educational Fund, Inc.*, — U.S. ——, 105 S.Ct. 3439, 3449, 87 L.Ed.2d 567 (1985) ("forum" does not require "physical situs"); *Perry Education Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 44–49, 103 S.Ct. 948, 954–57, 74 L.Ed.2d 794 (1983) (applying forum analysis to school system's internal mail system). The Program for the Blind and Physically Handicapped is not a traditional open public forum given its limited access and narrowly defined audience. Due to the prohibitive costs of reproducing materials in braille, though, many blind individuals are dependent on the Library of Congress' program for access to information and literature. The braille program to the extent that it is a government-sponsored means of communicating to a specific group of private individuals is a nonpublic forum subject to forum analysis despite the lack of a physical situs. *See e.g. Lee v. Board of Regents*, 441 F.2d 1257 (student-run university newspaper); *Bazaar v. Fortune*, 476 F.2d 570

1. Defendant correctly notes that judicial review under the Administrative Procedure Act (APA), 5 U.S.C. § 551, et seq., is inappropriate in this case. The Library of Congress is not an agency under the APA, and, therefore, review under the APA is unavailable. *See Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1416 n. 15 (D.C.Cir.1985). This does not change the result that the defendant's action is reviewable as an alleged violation of the Constitution.

2. Courts have held that *Playboy* magazine is not obscene under the Supreme Court's obscenity test in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), and therefore falls

within the First Amendment parameter of protected speech. *See e.g. Penthouse International, Ltd. v. McAuliffe*, 610 F.2d 1353 (5th Cir.), *cert. dismissed*, 447 U.S. 931, 100 S.Ct. 3031, 65 L.Ed.2d 1131 (1980). The Fifth Circuit found that "the inclusion of this literary matter [short stories, interviews and panel discussions by famous individuals] in significant proportions precludes a finding that *Playboy* taken as a whole lacks serious literary, artistic, political or scientific value." *Id.* at 1372.

3. Although defendant now asserts that the program is not a forum, he has admitted in the past that it is a "forum for information and ideas." Boorstin Deposition at 41.

(5th Cir.), *modified on other grounds*, 489 F.2d 225 (1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974) (student literary magazine).

 To eliminate or reduce access to a nonpublic forum, the government must have a rational basis. *Cornelius*, 105 S.Ct. at 3454. In *Cornelius*, the Supreme Court warned that "the existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a facade for viewpoint-based discrimination." *Id.* (remanded to determine if government impermissibly excluded NAACP from charity drive because it disagreed with its views). Defendant now contends that he eliminated *Playboy* not because of its content but to "avoid controversy" within the braille program. Def. Opp. at 23. The desire to evade controversy generally qualifies as a legitimate rational basis under nonpublic forum analysis. *Cornelius*, 105 S.Ct. at 3454. Plaintiffs, however, counter that Boorstin's decision was based only on the content of *Playboy* magazine.

 The Librarian was faced with a budgetary cutback which he could have enforced for any content-neutral reason rationally related to the braille program by applying the cutback to whatever program or magazine he felt appropriate or by spreading it across the Library's expenditures. Defendant, for example, might have chosen to remove *Playboy* because it requires an unusually large number of pages, making it disproportionately expensive compared to the number of subscribers to the magazine. Instead, Boorstin based his decision solely on his interpretation of the House floor debate to the extent that he understood and adopted the view that *Playboy* was to be eliminated because of its sexual orientation. This Court finds that defendant's action in overruling his staff and eliminating *Playboy* from the program was viewpoint-based discrimination impinging on freedom of expression.

Defendant used a backdoor approach to a formalistic game that Congressmen were playing to eliminate future editions of *Playboy*. Congressional concerns about the nature of *Playboy* may be well-taken, but for the past fifteen years the magazine consistently met the selection criteria established by the Library of Congress. This dispute is not about the value or merit of *Playboy* but about a viewpoint-based denial of a subsidy, a denial which in a less emotionally charged context Congress and the taxpayer may find less palatable. Censorship whether by Congress or by the Librarian of Congress is equally abhorrent to a society built on the tenets of freedom of speech and expression.

Therefore, in following his sense of Congress the defendant made his own non-content neutral decision in violation of the First Amendment.[4]

### *Relief*

Plaintiffs seek a declaratory judgment that defendant violated the First Amendment when he made a viewpoint-based decision to discontinue the production and distribution by the Library of Congress of braille editions of *Playboy*. For the reasons discussed above, the Court shall enter declaratory judgment for plaintiffs.

 There is no indication on the record that the Librarian of Congress will not abide by this ruling and, indeed, he has agreed pursuant to this ruling to resume production of *Playboy* in braille. In accordance with the bench ruling of August 28, 1986, the parties submitted proposed orders of relief. The government indicated in its filing, pursuant to the Court's decision that in the exercise of his authority the Librarian of Congress violated the First Amendment, that the defendant would not object to the following terms of relief directing the Librarian

(1) to resume production and distribution of braille editions of *Playboy;*

---

4. Plaintiffs and Amicae also raise a Fifth Amendment claim which this Court finds unnecessary to reach because the Court holds that the defendant violated the First Amendment by eliminating *Playboy* from the braille program.

(2) to produce and distribute braille editions of *Playboy* for calendar year 1987;

(3) to notify all subscribers to the program and libraries of the renewed availability of braille editions of *Playboy;* and

(4) to produce and maintain at the Library of Congress recorded or "talking book" editions of the 1986 issues of *Playboy* and to notify all persons and libraries who ordinarily receive such notice of the availability of these editions.

The Court finds that these terms of relief are sufficient and appropriate insofar as the Librarian has decided to undertake these steps in response to the Court's decision and shall so order, thereby minimizing court interference in the budgetary process. *See e.g. Joyner v. Whiting,* 477 F.2d 456 (4th Cir.1973) (authorizing injunction requiring resumption of funding for college newspaper); *Salvail v. Nashua Board of Education,* 469 F.Supp. 1269 (D.N.H.1979) (ordering high school library to replace issues of *MS* Magazine removed from library and to resubscribe to *MS* ). It does not find it necessary to order other more far reaching relief, confident the Librarian of Congress will act in the future in conformity with this Opinion and Order.

An order consistent with the terms of this opinion shall be issued simultaneously herewith.

### ORDER

Based upon all of the pleadings and briefs, the oral argument on the parties' respective motions for summary judgment heard on August 28, 1986, and the Court's bench and written opinions, it is

ORDERED that plaintiffs' motion for summary judgment is granted; and it is hereby ADJUDGED that defendant's action in terminating the production and distribution by the Library of Congress of braille editions of *Playboy* Magazine was in violation of the First Amendment to the United States Constitution; and it is

FURTHER ORDERED, pursuant to the parties' agreement in response to the Court's ruling, that

1) Defendant is directed to take all steps necessary to resume production and distribution by the Library of Congress of braille editions of *Playboy* Magazine;

2) During calendar year 1987, and beginning in January, 1987, defendant will cause the Library of Congress to produce and distribute in braille twelve monthly issues of *Playboy* Magazine;

3) Defendant will forthwith notify all persons and libraries who ordinarily receive notice of the availability of braille or recorded editions of materials produced and distributed by the Library of Congress that monthly production and distribution of braille editions of *Playboy* Magazine will resume in January, 1987, and that beginning in January, 1987, monthly braille editions of *Playboy* Magazine will be distributed as previously;

4) Defendant will promptly take all steps necessary to produce and maintain at the Library of Congress, and at such other locations as defendant deems appropriate, recorded or "talking book" editions of the January, 1986 through December, 1986 issues of *Playboy* Magazine; and

5) Defendant will forthwith notify all persons and libraries who ordinarily receive notices of the availability of braille or recorded editions of materials produced and distributed by the Library of Congress that recorded editions of the January, 1986 through December, 1986 issues of *Playboy* Magazine will be made available to them on request; and it is

FURTHER ORDERED that within 20 days after entry of this Order and Judgment plaintiffs will serve and file a formal application for attorneys fees and will brief the issue of their entitlement to an award of fees.