Robert J. KEEFE, Plaintiff, Appellant,

v.

George J. GEANAKOS et al.,
Defendants, Appellees.

No. 7463.

United States Court of Appeals
First Circuit.

Nov. 12, 1969.

Philip A. Mason, Boston, Mass., with whom Brown, Rudnick, Freed & Gesmer, Boston, Mass., were on brief, for appellant.

A. Kenneth Carey, Boston, Mass., and Terrance F. Perkins, Ipswich, Mass., for appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Plaintiff, who unsuccessfully sought from the district court a temporary injunction pendente lite, requests a stay, or more precisely, a temporary injunction, from us pending our determination of his appeal from the district court's refusal.[1] The matter is before us on the complaint, the answer, affidavits and exhibits introduced by both sides, certain statements of counsel, and the findings of the district court as contained in its opinion dated November 6, 1969.

The plaintiff is the head of the English department and coordinator for grades 7 through 12 for the Ipswich (Massachusetts) Public School System, with part-time duties as a teacher of English. He has tenure, pursuant to Mass.G.L. c. 71, § 41. The defendants are the members of the Ipswich School Committee.[2] Briefly, after some preliminaries, five charges were furnished the plaintiff as grounds for dismissal, and a hearing was scheduled thereon, which plaintiff seeks to enjoin as violating his civil rights. 42 U.S.C. § 1983. Jurisdiction is asserted under 28 U.S.C. § 1343(3)(4). In order to preserve the status quo, this hearing has not yet been held, and the defendants await our decision. The district court, in its opinion denying temporary relief, dealt with only one of the five charges, the third. We will hereafter refer to this as the charge.[3]

■ Reduced to fundamentals, the substance of plaintiff's position is that as a matter of law his conduct which forms the basis of the charge did not warrant discipline. Accordingly, he argues, there is no ground for any hearing. He divides this position into two parts. The principal one is that his conduct was within his competence as a teacher, as a matter of academic freedom, whether the defendants approved of it or not. The second is that he had been given inadequate prior warning by such regulations as were in force, particularly in the light of the totality of the circumstances known to him, that his actions would be considered improper, so that an ex post facto ruling would, itself, unsettle academic freedom. The defendants, essentially, deny plaintiff's contentions. They accept the existence of a principle of academic freedom to teach,[4] but state that it is limited to proper classroom materials as reasonably determined by the school committee in the light of pertinent conditions, of which they cite in particular the age of the students. Asked by the court whether a teacher has a right to say to the school committee that it is wrong if, in fact, its decision was arbitrary, counsel candidly and commendably (and correctly) responded in the affirmative. This we consider to be the present issue. In reviewing the denial of interlocutory injunctive relief, the test that we of course apply is whether there is a probability that plaintiff will prevail on the merits. Automatic Radio Mfg. Co., Inc. v. Ford Motor Co., 1 Cir., 1968, 390 F.2d 113, cert. denied 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653.

On the opening day of school in September 1969 the plaintiff gave to each

1. Plaintiff did not seek a stay order from the district court pending appeal, but was excused from doing so because of the court's unavailability.

2. Two school officials are also named, but may be disregarded for purposes of this opinion.

3. The defendants agree that charges 1, 2 and 4 are dependent on charge 3. They do, however, wish to press separately charge. 5. (Insubordination). The district court did not deal with this charge, and the record does not permit us to do

so. We do suspect, though, that however separate it may be, it is to some extent tied in with charge 3, and we believe that it would be better for all concerned to postpone consideration thereof until the disposition of the issue as to charge 3. We accordingly will make the same order, so far as temporary relief is concerned.

4. For a recent discussion of the cases see Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1048 (1968); cf. Wright, The Constitution on the Campus, 22 Vand.L.Rev. 1027 (1969).

member of his senior English class a copy of the September 1969 Atlantic Monthly magazine, a publication of high reputation, and stated that the reading assignment for that night was the first article therein.[5] September was the educational number, so-called, of the Atlantic, and some 75 copies had been supplied by the school department. Plaintiff discussed the article, and a particular word that was used therein, and explained the word's origin and context, and the reasons the author had included it. The word, admittedly highly offensive, is a vulgar term for an incestuous son. Plaintiff stated that any student who felt the assignment personally distasteful could have an alternative one.

The next evening the plaintiff was called to a meeting of the school committee and asked to defend his use of the offending word. Following his explanation, a majority of the members of the committee asked him informally if he would agree not to use it again in the classroom. Plantiff replied that he could not, in good conscience, agree. His counsel states, however, without contradiction, that in point of fact plaintiff has not used it again. No formal action was taken at this meeting. Thereafter plaintiff was suspended, as a matter of discipline, and it is now proposed that he should be discharged.[6]

The Lifton article, which we have read in its entirety, has been described as a valuable discussion of "dissent, protest, radicalism and revolt." It is in no sense pornographic. We need no supporting affidavits to find it scholarly, thoughtful and thought-provoking. The single offending word, although repeated a number of times, is not artificially introduced, but, on the contrary, is important to the development of the thesis and the conclusions of the author. Indeed, we would find it difficult to disagree with plaintiff's assertion that no proper study of the article could avoid consideration of this word. It is not possible to read the article, either in whole or in part, as an incitement to libidinous conduct, or even thoughts. If it raised the concept of incest, it was not to suggest it, but to condemn it; the word was used, by the persons described, as a superlative of opprobrium. We believe not only that the article negatived any other concept, but that an understanding of it would reject, rather than suggest, the word's use.

With regard to the word itself, we cannot think that it is unknown to many students in the last year of high school, and we might well take judicial notice of its use by young radicals and protesters from coast to coast.[7] No doubt its use genuinely offends the parents of some of the students—therein, in part, lay its relevancy to the article.

Hence the question in this case is whether a teacher may, for demonstrated educational purposes, quote a "dirty" word currently used in order to give special offense, or whether the shock is too great for high school seniors to stand. If the answer were that the students must be protected from such exposure, we would fear for their future. We do not question the good faith of the defendants in believing that some parents have been offended.[8] With the greatest

---

5. "The Young and the Old," by Robert J. Lifton, a psychiatrist and professor at a noted medical school.

6. The question must be considered whether this suit is premature, at least so far as an injunction against holding the meeting is concerned, since conceivably the vote might be in plaintiff's favor. We intimated as much during oral argument, but defendants' counsel did not respond. Very possibly counsel recognize that dismissal is a foregone conclusion, as plaintiff suggests, or defendants feel that if, in fact, there is no cause for dismissal, they would prefer a declaratory decision in advance. Under the circumstances we accept jurisdiction as a matter of discretion.

7. *E. g.*, "Up against the wall, motherfucker." ·

8. It is appropriate in this connection to consider what, exactly, is the charge with which plaintiff is presently faced.

of respect to such parents, their sensibilities are not the full measure of what is proper education.

■ We of course agree with defendants that what is to be said or read to students is not to be determined by obscenity standards for adult consumption. Ginsberg v. New York, 1968, 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195. At the same time, the issue must be one of degree. A high school senior is not devoid of all discrimination or resistance. Furthermore, as in all other instances, the offensiveness of language and the particular propriety or impropriety is dependent on the circumstances of the utterance.

Apart from cases discussing academic freedom in the large, not surprisingly we find no decisions closely in point. The district court cited what it termed the well-reasoned opinion of the district court in Parker v. Board of Education, D.Md., 1965, 237 F.Supp. 222, aff'd 4 Cir., 348 F.2d 464, cert. denied 382 U.S. 1030, 86 S.Ct. 653, 15 L.Ed.2d 543, regarding it "strikingly similar on its facts to the instant case, in that it too involved a high school teacher challenging his dismissal from employment in a public school system because of his assigning 'Brave New World' to a class as an infringement of his claimed First Amendment right of free speech * *." We do not find ourselves impressed by the *Parker* court's reasoning, or by the similarity of the facts. As to the latter, *Parker* was not a case where the teacher was dismissed. As the court of appeals pointed out, Parker, unlike plain-tiff, did not have tenure, and his only complaint was that his contract was not renewed. With regard to the reasoning, we think it significant that the court of appeals affirmed the district court only on this distinguishing ground, and disclaimed approval of the balance of the opinion. We accept the conclusion of the court below that "some measure of public regulation of classroom speech is inherent in every provision of public education." But when we consider the facts at bar as we have elaborated them, we find it difficult not to think that its application to the present case demeans any proper concept of education. The general chilling effect of permitting such rigorous censorship is even more serious.[9]

We believe it equally probable that the plaintiff will prevail on the issue of lack of any notice that a discussion of this article with the senior class was forbidden conduct. The school regulation upon which defendants rely,[10] although unquestionably worthy, is not apposite. It does not follow that a teacher may not be on notice of impropriety from the circumstances of a case without the necessity of a regulation. In the present case, however, the circumstances would have disclosed that no less than five books, by as many authors, containing the word in question were to be found in the school library. It is hard to think that any student could walk into the library and receive a book, but that his teacher could not subject the content to serious discussion in class.

Such inconsistency on the part of the school has been regarded as fatal.

"3. Use of offensive material in the classroom on September 3, 1969, and subsequently, which use would undermine public confidence and react unfavorably upon the public school system of Ipswich * * *"

9. "Such unwarranted inhibition upon the free spirit of teachers affects not only those who, like the appellants, are immediately before the Court. It has an unmistakable tendency to chill that free play of the spirit which all teachers ought especially to cultivate and practice * * *." Frankfurter, J., concurring, in Wieman v. Updegraff, 1952, 344 U.S. 183, 194, 195, 73 S.Ct. 215, 221, 97 L.Ed. 216.

10. "1. Teachers shall use all possible care in safeguarding the health and moral welfare of their pupils, discountenancing promptly and emphatically: vandalism, falsehood, profanity, cruelty, or other form of vice."

*See also*, Mass.G.L. c. 71, § 30, "Moral Education."

Vought v. Van Buren Public Schools, E. D.Mich., 6/13/69, 38 Law Week 2034. We, too, would probably so regard it. At the same time, we prefer not to place our decision on this ground alone, lest our doing so diminish our principal holding, or lead to a bowdlerization of the school library.

█ Finally, we are not persuaded by the district court's conclusion that no irreparable injury is involved because the plaintiff, if successful, may recover money damages. Academic freedom is not preserved by compulsory retirement, even at full pay.

█ The immediate question before us is whether we should grant interlocutory relief pending appeal. This question, as defendants point out, raises the ultimate issue of the appeal itself. The matter has been extensively briefed and argued by both sides. We see no purpose in taking two bites, and believe this a case for action under Local Rule 5. The order of the district court denying an interlocutory injunction pending a decision on the merits is reversed and the case is remanded for further proceedings consistent herewith.