Ann **FLAHERTY**, on her own behalf and as next friend of her minor son, Jack Flaherty, etc., Plaintiff,

v.

Vincent P. **CONNERS** et al., Defendants.

Civ. A. No. 70–1641–C.

United States District Court, D. Massachusetts.

Dec. 10, 1970.

**1285**

Committee, the Superintendent of the Boston Public Schools, the Principal of the Peter Faneuil School, the Acting Director of the Department of Special Classes in the Boston Public Schools, the Commissioner of the State Board of Education of the Commonwealth of Massachusetts, the Commissioner of the Department of Mental Health of the Commonwealth of Massachusetts, and the head of the Division of Special Classes of the State Board of Education of the Commonwealth of Massachusetts.

Jurisdiction of this court is invoked on the basis of 28 U.S.C. §§ 1331, 1343, 2201 and 2202, and 42 U.S.C. § 1983. The complaint alleges that this is a class action. The matter came before the court for hearing on plaintiff's application for a preliminary injunction on that portion of the complaint seeking an order directing those defendants employed by the City of Boston to re-admit the infant plaintiff, Jack Flaherty, to special classes conducted at the Peter Faneuil School until such time as a proper hearing regarding his suspension is afforded him by the School Committee, pursuant to Mass.G.L. c. 76, sec. 17. At the hearing, defendants orally moved for dismissal of the action on the bases of the doctrine of exhaustion of state remedies and abstention.

A number of witnesses testified at the evidentiary hearing. They included Mrs. Ann Flaherty, mother of the plaintiff; Miss Sarah McLaughlin, the Special Class teacher in charge at the Peter Faneuil School; Dr. Alice Casey, an Associate Superintendent of the Boston Schools who has responsibility for special students and special classes; Dr. Vincent P. Conners, Director of Special Classes for the Boston School Department; and Mrs. Edith W. Fine, Assistant Corporation Counsel for the City of Boston.

The first point to be resolved on the basis of the evidence of these witnesses is that there is no foundation for the allegation that this is a class action, and it is obvious from the tenor of the testimony given that this case solely concerns the infant plaintiff, Jack Fla-

Michael L. Altman, Boston Legal Assistance Project, Dorchester, Mass., S. Stephen Rosenfeld, Boston, Mass., for plaintiff.

Edith Fine, John M. Hyson, City of Boston Corporation Counsel, Boston, Mass., for defendants.

## OPINION

CAFFREY, District Judge.

This is a civil action in which suit has been brought on behalf of plaintiff, a fifteen year old retarded child, by his mother as next friend, against the five elected members of the Boston School

herty. Consequently, I hold that this case cannot properly be ruled a class action under Rule 23, Federal Rules of Civil Procedure.

■ With regard to the motions to dismiss, it should be noted that plaintiff has made no showing of any attempt on his part to exhaust either his state administrative or judicial remedies. It is clear that subsequent to his receipt of notice of suspension, on October 23, 1970, plaintiff was not afforded a hearing before an assistant superintendent "within six school days of the original suspension," as required by Section 215.3 of the Amended School Committee Rules. (See Appendix A to plaintiff's Memorandum of Law.) However, Section 215.3 goes on to provide for a review by the superintendent of any decision of the assistant superintendent and, if the former is unable to settle the case "within five additional school days * * * the pupil or his parent or guardian may request that the school committee review the matter. * * * " Furthermore, given the fact that "a school committee shall not permanently exclude a pupil from the public schools for alleged misconduct without first giving him and his parent or guardian an opportunity to be heard," Mass. Gen.Laws, c. 76, sec. 17, and assuming, *arguendo*, that plaintiff and the school he attends are covered by this statute, plaintiff appears to possess adequate and, as yet, unexhausted administrative remedies. In this regard, the court finds significant plaintiff's allegation in his memorandum of law, at p. 2, that "no school official has indicated a willingness to hold a hearing * * *," and yet, counsel for plaintiff has proffered no correspondence whatsoever between plaintiff's mother and the school superintendent or the school committee requesting a hearing under Rule 215.3.

Moreover, even assuming the fact that the school committee refused to adhere to the procedures provided for after plaintiff had properly requested a formal hearing, then redress for plaintiff's grievances clearly seems to be provided for under the State Administrative Procedure Act, Mass.Gen.Laws, c. 30A, sec. 14, which offers appeals from administrative decisions to the state courts and, ultimately, to the Supreme Judicial Court.

The same is true, too, with regard to any contested regulation promulgated by the State Department of Education under Mass.Gen.Laws, c. 71, sec. 46, e. g., the regulation providing for the exclusion of an educable child if his presence is detrimental to members of his class or his school. The appropriate forum to decide such issues is the state Superior Court. See Mass.Gen.Laws, c. 30A, sec. 1 et seq.

Thus, this case falls without the rule of cases such as Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), McNeese v. Bd. of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1967), and Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), and more properly comes under the rule enunciated by the Court of Appeals for the Second Circuit in Eisen v. Eastman, 421 F.2d 560 (1969), and Armsden v. Cataldo, 315 F.Supp. 129 (D. Mass. 1970).

In a somewhat similar situation vis-a-vis the exhaustion of available state remedies, the Court of Appeals for this Circuit, in Keefe v. Geanakos, 418 F.2d 359 (1969), made it clear that normally available and adequate state rights in a school controversy of this nature must be taken advantage of, the Court noting (p. 361, n. 6): " * * * Under the circumstances we accept jurisdiction as a matter of discretion." The circumstances referred to were the fact that the defendant in the *Keefe* case had, in effect, waived the prematurity of resort to the federal forum without exhausting state administrative and court remedies.

That the doctrine of abstention until the exhaustion of adequate and available state rights has become well-established in this Circuit appears from Needel v. Scafati, 412 F.2d 761, 765 (1 Cir. 1969); Lamoureux v. Commonwealth, 412 F.2d 710 (1 Cir. 1969); Lofland v. United States, 412 F.2d 767 (1 Cir. 1969), and

a similar ruling was recently made, without opinion, by Chief Judge Wyzanski in Frier v. Board of Trustees, Civil Action No. 70–1451–W (D.Mass., Oct. 29, 1970).

These rulings, taken together, make it abundantly clear that there is no validity to the belief apparently held by some counsel, that a mere allegation of the denial of claimed constitutional rights automatically authorizes the by-passing of perfectly adequate and perfectly available administrative and judicial procedures established by state law. Nor is there any basis in the instant case for claiming that remedies available under the laws of the Commonwealth of Massachusetts are either futile or unconstitutional.

In view of the fact that there is some difference of opinion among the Circuits on the issue of abstention and having in mind that a full evidentiary hearing has already been held herein, it would appear that principles of judicial economics and a proper regard for the public interest indicate that this court should go beyond the jurisdictional ruling and as an additional but independent ground for decision, resolve the merits of the application for a preliminary injunction.

On the basis of the testimony of Miss McLaughlin, which I find to be completely credible, I find that Jack Flaherty is a retarded child who has just turned fifteen years of age, that until October 20, 1970, he was a student in his fourth year in special education classes in the Boston Public School system, and that he is approximately 5′7″ or 5′8″ in height and weighs approximately 170 pounds. I further find, if it be material, and I believe it is, that Miss McLaughlin is a young lady slightly over 5′ in height, whose weight would appear to the court to be not in excess of 110 pounds. I find that Miss McLaughlin is in charge of coordinating the education of approximately sixty special students (retarded children) at the Peter Faneuil School, and that these sixty unfortunate youngsters are divided into groups supervised by six teachers.

I find that in the last two calendar years, Jack Flaherty has become progressively more unruly in class, has become disruptive, has assaulted other retarded children in his group, and has yelled and shouted and otherwise interrupted classes frequently. In fact, there was introduced in evidence a journal kept by Miss McLaughlin in which she recorded various examples of disruptive and destructive behavior on the part of Jack Flaherty, including breaking windows in the school and in the taxicab which brought him to school, spitting at the Principal, wiping his nose on the taxi driver's sleeve, resulting in the refusal of that particular driver to transport him, and constantly punching Billy Bourque, another special student, in the face and back for no reason. I find that he has incited other youngsters to follow this conduct, that his behavior has become so abnormal that it is necessary for a teacher to meet him as he emerges from the taxi which brings him to school daily, take him by the hand to his classroom and then conduct him by the hand from classroom to classroom during the day, and that it has been necessary for Miss McLaughlin to take his lunch from him to obviate his eating it ahead of time and then taking a lunch from some other child. I find that he is the only one of the sixty special students to require this special treatment, being walked by hand from class to class and having his lunch removed. I find that he frequently yells and screams during classes, makes a lot of noise, and throws things. I find that his yelling and noise-making upset the other children and tend to lead them into the same kind of disruptive behavior. I find that his disruptive conduct made it necessary for him to be put into a group with only nine children, although all the other groups contained twelve or thirteen children. I further find that since his suspension the group of which he was a member has been increased to eleven and there have been no instances of yelling or other disruptive actions at the Peter Faneuil School since his departure.

Both Miss McLaughlin and Jack's mother testified, and consequently I find, that Jack has gotten nothing from his education in the last two years. I find credible Miss McLaughlin's testimony that "we have gone way beyond the call of duty in his case and it is no longer fair to the other kids to keep him in the school." I also find credible her testimony that "Jack can't adjust to this type of training."

The nub of the complaint proffered herein is a claimed denial of procedural due process, in that Jack Flaherty was allegedly suspended without being offered a hearing. On the testimony of Dr. Conners and Mrs. Fine, both of whom I find to be truthful witnesses, I find that about two weeks prior to the hearing held herein on November 23, Mrs. Fine received a telephone call from counsel for the plaintiff in which she was requested to look into the matter of Jack Flaherty's suspension, that Mrs. Fine did so, and thereafter discussed arrangements for a hearing or conference with Dr. Casey, and that tentative arrangements were made for a hearing at which all the principals, including Jack Flaherty, his mother, and his counsel, would be present.

I further find that Mrs. Fine contacted Mr. Altman, counsel for the Flahertys, and offered him a tentative date for the conference the following Wednesday, that Mr. Altman indicated he would get back to her, and the next thing Mrs. Fine knew, process relating to this lawsuit was served upon the various defendants. Assuming, despite the testimony of Dr. Conners to the contrary, that there is an obligation to keep this child in school and not to discharge him without a hearing, I find that Assistant Corporation Counsel Mrs. Fine proffered the opportunity, albeit late, for a full and fair administrative hearing to counsel for the plaintiffs. I find that her offer for this hearing or conference was made to Mr. Altman. I further find that although a tentative date was set for this hearing in the conversation between Mrs. Fine and Mr. Altman, the offer for the hearing was tacitly refused by Mr. Altman, who, instead of confirming the tentative date, brought suit.

Having in mind that the transcript of the hearing confirms that no one on behalf of plaintiffs ever applied, either orally or in writing, for the type of hearing established by Section 215.3 of the Amended School Committee Rules, I rule that no showing has been made herein entitling plaintiffs to a court order. This ruling, of course, is without prejudice to plaintiffs' following the guidelines established in Section 215.3 and thereby utilizing the administrative procedures and remedies available thereunder.

Finally, I rule that because of the waiver of the hearing proffered by Mrs. Fine, because of the agreement between the testimony of Miss McLaughlin and Mrs. Flaherty that Jack had received no benefit whatsoever from his last two years in school, and in view of his highly disruptive behavior and its resultant impairment of the rights of all his schoolmates in the Peter Faneuil School, there has been no showing of irreparable harm herein.

Consequently, the application for a preliminary injunction is denied.