Cathy L. AMAN, et al., Plaintiffs, Appellants,

v.

Evelyn HANDLER, et al., Defendants, Appellees.

No. 81–1066.

United States Court of Appeals, First Circuit.

Argued May 8, 1981.

Decided July 7, 1981.

Jean-Claude Sakellarios, Manchester, N. H., with whom Richard C. Follender was on brief, for plaintiffs, appellants.

Joseph A. Millimet, Manchester, N. H., with whom Devine, Millimet, Stahl & Branch, Manchester, was on brief, for defendants, appellees.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

BREYER, Circuit Judge.

Appellants, two students at the University of New Hampshire ("UNH"), sought to organize and to obtain official university recognition of a UNH chapter of the Collegiate Association for Research of Principles ("CARP")—an association that allegedly has close ties with Reverend Sun Myung Moon and the Unification Church. After being refused recognition by UNH, they brought a civil rights action in the district court,[1] claiming that the refusal by UNH—a state university—to recognize their organization violated their first amendment rights.[2] After a brief hearing, the district court denied their request for a preliminary injunction. They have appealed this denial.

We believe that the district court applied incorrect standards in reaching its decision. Our review of the record, however, convinces us that further proceedings are necessary to determine whether or not an injunction is warranted. We therefore remand the case with instructions that such proceedings take place expeditiously and that the district court then decide whether or not an injunction is warranted in accordance with the standards laid down in *Healy v. James*, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).

I.

The record suggests that CARP, from a formal point of view, is several different organizations with different geographic responsibilities. CARP was initially founded in Japan by student members of the Unification Church. Subsequently, a CARP–U. S. organization was founded with national responsibilities. State CARP organizations

---

1. 42 U.S.C. §§ 1983, 1985 and 1988.

2. The complaint alleges that denial of official recognition has resulted in an "impairment of freedom of expression, religion, assembly and association". Appellants' main argument seems to be that their right to associate for the purpose of philosophical and religious discussion has been impaired although they also seem to claim that UNH has discriminated against them because of their affiliation with the Unification Church.

exist, as do local CARP organizations on college campuses. These organizations all bear some relation to the Unification Church, the exact nature of which is disputed in the record. Appellees allege that CARP is the college-based recruiting arm of the Church; appellants claim that CARP is more independent, though they admit an overlap of some members. Similarly, the relationship of the various CARP organizations to each other is in dispute, with appellees claiming that there is really but one well-disciplined CARP entity and appellants asserting significant unit independence.

Be that as it may, the record suggests that CARP enjoyed some form of recognition at UNH during 1975–1976. During 1977 and 1978, it apparently proselytized without formal recognition. And, in September 1980, appellants formally applied to the UNH Student Organizations Committee ("SOC") for official recognition as a student organization.

Appellants submitted their application on a UNH form. They stated that CARP's purpose was to "revitalize the founding spirit of Judeo-Christianity and to offer [a] critique and counter proposal to atheistic Marxist-Leninism". They listed CARP's officers as "Pres. Michael D. Tillman" and "Vice Pres. Cathy L. Aman," and they listed Patrice B. Gans in the "officer" space without designating a specific office. They said that membership was open to "everyone". The form itself required that appellants certify that they would adhere to "the student rules applying to student organizations."

The application was reviewed by SOC in accordance with UNH rules.[3] SOC provided CARP with "tentative recognition",[4] and appellants met with members of SOC. SOC then took two actions not taken in the ordinary "student organization" case: they convened a six-member committee to investigate CARP groups on other college campuses and to research the history of CARP at UNH, and they distributed a questionnaire eliciting UNH student attitudes about CARP. On October 30, 1980, SOC denied CARP official recognition on the ground that the applicants did not have two full-time degree candidates as officers. Whether or not Cathy L. Aman was a fulltime student evidently depended upon whether she would obtain four hours credit for a mathematics course. While Patrice B. Gans was a fulltime student, later evidence at the court hearing suggests that she may not have been a CARP member.

Appellants next told Renee Romano, the Acting Assistant Director of Student Activities, that Aman had received the necessary credits and was a fulltime student. On her

3. The rules of UNH concerning a student organization state in part:

Use of the University name. The University name, or any part thereof, shall not be used by any student or group of students in connection with any public performance, except as authorized by the Office of Student Activities upon registration by the Committee on Student Organizations . . . .

Registration of student organizations. All student organizations, except for academic organizations directly affiliated with an academic department as approved by the Committee on Student Organizations, should register with the Student Activities Office. This registration is the first step in acquiring permanent recognition for the organization. Registration will include a meeting with a member of the student activities staff. An organization's statement of purpose and a list of its officers who are full-time degree candidates must be submitted during this meeting. Tentative recognition can be granted by the Student Activities Office, pending approval by the Committee on Student Organizations, and will be based on there being no violation of University regulations, having a membership which is 75% University students and having officers who are currently enrolled University Students.
UNH Rights & Rules ¶¶ 14.11, 14.12.

4. The UNH rules provide:

Tentative recognition is for organizing purposes and carries restriction on financial and meeting arrangements. New organizations receiving recognition may not avail themselves of University services other than using facilities for organizing purposes and may not use the University name until the Student Organizations Committee has recognized the organization. Criteria for recognition will be based upon adherence to University rules as well as being in accord with the best interests and academic mission of the University.
UNH Rights & Rules ¶ 14.12.

advice, they reapplied for recognition. Their application, submitted on November 4, 1980, listed Aman and Tillman as CARP officers, stated that "anyone following Univ. of N. H. guideline rules" could become a member, and described CARP as "a student organization dedicated to educating people in ideologies, religious values, and international patriotism". UNH Vice President for Student Affairs J. Gregg Sanborn testified at the court hearing that the application satisfied formal UNH requirements for recognition.

On November 25, 1980, Vice President Sanborn, the SOC and appellants held what UNH characterizes as a "hearing" and appellants as a "meeting". Appellant Aman testified that she and Tillman were asked why they thought the application met the necessary recognition requirements. She testified:

I said that I felt the reason why we fulfilled the requirements was that 75 percent of our members were full-time students; and we stated our goal was to encourage Judeo-Christianity and to teach a critique and counter proposal to Marxist-Leninism.

Vice President Sanborn then circulated a previously prepared statement which said:

Position Statement—Collegiate Association for the Research of Principles (CARP).

J. Gregg Sanborn, Vice President for Student Affairs, after consultation with the University of New Hampshire Student Organizations Committee, has made the decision to deny formal University of New Hampshire recognition to the Collegiate Association for the Research of Principles.

This decision was reached after considerable deliberation and review of the alleged and actual past and present practices of the organization, both on and off the University of New Hampshire campus. Specifically, it is felt the University of New Hampshire should not formally rec-

ognize an organization which has a demonstrated history on campus of working against the University's educational mission. It is the opinion of the University that CARP is primarily a recruitment branch for the Unification Church and past experience has shown students left the University with the encouragement of CARP. It appears the experience of many students after leaving colleges and universities has been negative and possibly harmful. In addition, the Unification Church has openly admitted deceptive practices have been used by the organization. Allegations that CARP has continued its previous practice and philosophy are evident since the organization continues to be accused of exerting total influence over their members' lives; community service seems essentially non-existant [sic]; the pre-requisite isolation from family and friends is reported to continue; and constant solicitation for money still seems to be a primary project.

Individuals have the right to express political and religious viewpoints in public places on campus but the University does not feel obligated to lend its name and resources to a collection of two full-time students wishing to be formally recognized as CARP, a group which has had a questionable past history and, on the University campus, has clearly demonstrated its practices are contrary to the best interests of the University. Present full-time student members of CARP have not been able to demonstrate that CARP's philosophy and practices are different from previous years.

At the end of the meeting, the members of SOC voted to leave the recognition decision up to Sanborn. He decided against recognition for the reasons mentioned in his prepared statement. Appellants' tentative organizational status was revoked. Aman and Tillman then appealed to the University president, who supported Sanborn's decision.[5]

5. When appellants first received Vice President Sanborn's statement, they asked him how they might appeal it. He informed them that he had already conferred with the UNH president, who agreed with the decision, but that they could appeal to the UNH president nevertheless.

On December 12, appellants filed a complaint with the district court. At a hearing, held on December 23, the facts just described were elicited. There was also testimony that "recognition" by the University carries with it the right to use the University's name, eligibility to apply for certain student funds, and increased access to University facilities for group functions and to plan, schedule, and participate in official student activities. Appellants pointed out that UNH recognized numerous student religious organizations, some affiliated with major church groups, others not; some engaged in active proselytizing, others not.[6]

UNH presented testimony primarily by Vice President Sanborn that CARP was harmful to the University, engaged in deceptive practices, and did not meet the requirement that three-quarters of its members be fulltime UNH students. Appellants denied each of these claims. The district court agreed with UNH that appellants had engaged in deceptive practices; it found that CARP would interfere with appropriate discipline; and it accepted the claim that three-quarters of its members were not fulltime students. The court refused to issue a preliminary injunction. This appeal followed.

## II.

The facts enunciated so far are sufficient to call into play the principles of *Healy v. James, supra*—a case in which the Supreme Court considered the refusal of a state university to recognize a local chapter of the Students for Democratic Society ("SDS"). First amendment rights—whether of speech or religion [7]—are plainly at stake. For one thing, Vice President Sanborn's letter and his testimony suggest that the organization's "philosophy" or views played some role in his decision not to grant CARP rec-

ognition. For another, as in *Healy*, nonrecognition is not simply denial of the "college's stamp of approval", *id.* 408 U.S. at 182, 92 S.Ct. at 2347, but seems also likely to mean "denial of use of campus facilities for meetings and other appropriate purposes", *id.* at 181, 92 S.Ct. at 2346. Finally, UNH has recognized many other organizations of various religious and political views. Thus, as *Healy* specifically holds, since appellants "filed an application in conformity with the requirements, the burden was upon the College administration to justify its decision of rejection", *id.* at 184, 92 S.Ct. at 2347, and this burden is a "heavy" one, *id.*

*Healy* goes on to specify that the college could not refuse recognition "simply because it finds the views expressed by any group to be abhorrent", *id.* at 187–88, 92 S.Ct. at 2349. It suggests that refusal would be proper in three circumstances: First, the state university might prove that the group has a "knowing affiliation with an organization possessing unlawful aims and goals, and a specific intent to further those illegal aims". *Id.* at 186, 92 S.Ct. at 2348. Second, it might prove that the particular group would be a "disruptive influence" in the sense that it poses a "substantial threat of material disruption". The threat must be one of "conduct", not "speech". *Id.* at 188–89, 92 S.Ct. at 2349–50. Third, the college might show that the group is unwilling "to be bound by reasonable school rules governing conduct". *Id.* at 191, 92 S.Ct. at 2351. So far, UNH has not met the burden laid down by *Healy*, for it has failed to show that it has reasonable grounds to believe in the existence of any circumstance that would allow nonrecognition.

First, UNH claimed at the hearing that CARP violated its rule that "a minimum of

6. These include: Bahai College Club; Campus Crusade for Christ; The Church of Jesus Christ of Latter-day Saints Student Association; Christian Science Organization; Inter-Varsity Christian Fellowship; Jewish Students Organization; The Navigators; Saint Thomas More Catholic Student Organization; and The Way Ministry.

7. One court has recently upheld a denial of tax exempt status to buildings owned by the Unification Church on the ground that it is not primarily a religious organization. *In re the Holy Spirit Assoc. for the Unification of World Christianity v. Tax Comm. of the City of New York*, App.Div., 438 N.Y.S.2d 521 (1st Dept. 1981); *see* New York L.J., May 8, 1981, at 1.

three-quarters of the active membership must be full-time students", which we assume *arguendo* would qualify as a "reasonable school rule" under the third prong of *Healy*. Its evidence primarily consisted of the fact that Aman and Tillman lived with six other CARP members who were not students at UNH. Yet, Aman and Tillman claim that they wish to form a *UNH* CARP chapter; their living companions belong to *other* CARP organizations; and appellants assert that those persons will not be members of CARP–UNH. UNH evidently allows local Catholic, Jewish, Democratic, and Republican organizations, despite the fact that their members might live with any number of Catholics, Jews, Democrats, or Republicans who do not attend UNH. Perhaps the relationship of CARP–UNH to CARP or to the Unification Church is somehow "different". But, the record *so far* does not demonstrate that difference; it provides little more than Vice President Sanborn's opinions and counsel's mostly unsuccessful efforts to elicit testimony from appellants on cross-examination about a "special" relationship among CARP members, chapters and the Unification Church. Above all, UNH raised this claim for the first time during the court hearing; it did not give appellants notice or a fair opportunity to respond to the claim at the campus meeting.

Second, UNH claims that CARP–UNH would be controlled by national CARP or the Unification Church, which we assume *arguendo* would suffice as a ground for nonrecognition under either the first or the third prong of *Healy*. UNH rules state:

> Only the local members of a student organization may determine its membership, policies, and action, although they may receive guidance from their outside affiliate organizations. Affiliation with an off-campus organization shall not in itself disqualify a student organization from institutional recognition.

UNH Rights & Rules ¶ 14. Again, it may be possible to prove that the degree of control exerted over the UNH chapter by outside, or parent, organizations significantly exceeds that contemplated by the rule and allowed in the case of other organizations. But, so far, the record does not come close to demonstrating such control. For the most part, UNH seemed content to show that CARP–UNH would be closely affiliated with the Unification Church, and appellants spent considerable time denying, or minimizing the extent of, any such association. But, to show the existence of such an association is insufficient unless UNH goes further and demonstrates specifically why and how that association would result in a degree of control over the UNH chapter which either violates reasonable rules or standards related to conduct or demonstrates a "specific intent to further ... illegal aims." *Healy v. James*, 408 U.S. at 186, 92 S.Ct. at 2348.

Third, UNH has suggested that CARP will violate various rules related to conduct. These may include the rule which forbids a "disturbance which interferes with the normal operation of the University"; the rule which states that "no student organization is to encourage or require unlawful acts or violation of University rules by its members"; or the rule which requires organizations "to take every reasonable precaution to insure that its activities and participants in its activities conform to the law and to University standards of conduct".[8] Vice President Sanborn's statement speaks of past CARP "recruitment" activities, "solicitation for money", efforts to exert "total influence over their members' lives" and "isolation from family and friends"—all of which may involve violations of rules or generally acceptable University standards of proper behavior. Perhaps past experience with CARP provides reason to believe that this organization, if recognized, will engage in such *conduct* inimical to reasonable University standards and directly harmful to members of the University community. Yet, Aman and Tillman have pledged numerous times to live up to all University standards and to obey all University rules. And the University remains free to with-

8. UNH Rights & Rules ¶ 14.122.

draw or suspend recognition if they fail to do so. *See Healy v. James*, 408 U.S. at 194 n.24, 92 S.Ct. at 2353 n.24. Thus, to withhold recognition on this ground, the University must do more than simply make conclusory statements; it must provide evidence—perhaps drawn from past experience or experience elsewhere—for believing that CARP–UNH will engage in such activity despite its protestations to the contrary.

Finally, UNH claims, and the district court found, that Aman and Tillman engaged in "deceptive practices". If so, the record does not reveal them. UNH counsel seems to have tried to prove through Aman's and Tillman's testimony that CARP was closely linked to Reverend Moon; Aman and Tillman may have sought to minimize the connection, but they did not deny it. They may have understated, or overstated, their points from time to time, or have given confused answers, but given the intensity of a hostile cross-examination, their responses do not constitute "deception" to the point where it might provide grounds for nonrecognition. The district court also found that they were deceptive in their initial application in using the name of Patrice Gans, who Tillman knew "was not a University of New Hampshire student when the first application was filed". In fact, Patrice Gans *was* a UNH student; she may not, in fact, have wished to become a CARP member; she may have only been trying to help Tillman form the organization. But, according to Tillman, such an "accommodation" was not uncommon at UNH; and a new application was filed, in any event, without Gans' name. In the absence of any indication that the use of Gans' name either reflected an intent to deceive or had any material impact on appellants' application, it alone cannot suffice to justify denial of recognition.

In sum, the record does not clearly indicate that UNH's asserted grounds for denial sufficiently separate CARP's protected "speech" activity from unprotected "conduct". It does not make clear precisely what past or likely future "conduct" UNH

objects to. And, it does not demonstrate that UNH has given CARP a significant opportunity at the campus level to know, and to respond to, the allegations made against it.

We are ordinarily reluctant to disturb a district court decision not to issue a preliminary injunction. *E. g., National Tank Truck Carriers, Inc. v. Burke*, 608 F.2d 819, 823 (1st Cir. 1979); *Walker v. Providence Journal Co.*, 493 F.2d 82, 87 (1st Cir. 1974); *Automatic Radio Mfg. Co. v. Ford Motor Co.*, 390 F.2d 113, 115 (1st Cir.), *cert. denied*, 391 U.S. 914, 88 S.Ct. 1807, 20 L.Ed.2d 653 (1968). Yet, where restraints on speech or religion are at issue, appropriately speedy action designed to protect the exercise of constitutional rights is required, *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *see also Keefe v. Geanakos*, 418 F.2d 359 (1st Cir. 1969).

While we decide that the judgment denying the preliminary injunction should be vacated, we do not think the record is so clear and complete as to warrant immediate issuance of a preliminary injunction. Indeed, the record provides some reason to believe that UNH may be able to obtain evidence sufficient to support its claims. Moreover, there would seem to be little need for decision during the vacation months immediately ahead, but rather a greater need for more factual development in the light of pertinent standards. We therefore remand this case to the district court with instructions to proceed expeditiously to an evidentiary hearing, after which the district court shall determine, in accordance with *Healy's* standards, whether an injunction shall issue. We leave to the district court the optimal course of such future proceedings—whether to take further evidence on a preliminary injunction, proceed to consider a permanent injunction, or hold its own hearings in abeyance to allow for further informal hearings on campus at which both UNH and appellants would have a fair opportunity to offer evidence [9] and to make arguments. (If on the

---

9. An on-campus hearing need not meet formal trial-type standards of procedure. Hearsay evidence, for example, is admissible in most administrative hearings.

basis of evidence produced at an on-campus hearing, UNH concludes that nonrecognition is appropriate, the district court would determine whether that decision was reasonable in light of *Healy's* standards.) In any event, mindful of the important first amendment interests at stake and the fleeting nature of academic enrollments, we think it imperative that appropriate action be taken as promptly as possible toward a final decision.

*Vacated and remanded.*

Levin H. Campbell, Circuit Judge, filed dissenting opinion.