Jeffrey J. PYLE, et al.

v.

The SOUTH HADLEY SCHOOL COMMITTEE, et al.

Civ. A. No. 93–30102–F.

United States District Court, D. Massachusetts.

June 8, 1993.

John Reinstein, Sarah Wunsch, Civil Liberties Union of Massachusetts, Boston, MA, William Newman, Civil Liberties Union, Northampton, MA, for plaintiffs.

Raymond R. Randall, Lyon, Scully & Fitzpatrick, Holyoke, MA, for defendants.

*MEMORANDUM REGARDING PLAIN-*
*TIFFS' MOTION FOR TEMPORARY*
*RESTRAINING ORDER* [1]

(Docket No. 2)

PONSOR, United States Magistrate
Judge.

In a poem aptly entitled "Sex" the great
Chilean poet and Nobel laureate Pablo Neru-
da has written:

The harems have opened
in this year of our Lord
and Sex has jumped out of the windows,
the executive suites and the doors....
A great wave of nudes has rolled up
and crashed over the cathedrals.

Pablo Neruda, *New Poems (1968–70)*, 70–71
(Ben Belitt, trans., Grove Press 1972).

In this atmosphere, Neruda writes, "[i]t's
hard to escape/ to one's work or one's
loves...."

The court must decide whether the plain-
tiffs, two minor high school students bringing
suit through their father, are entitled to tem-
porary, immediate relief against a policy that,
as applied by administrators at South Hadley
High School in Massachusetts, prohibits their
wearing on school premises either of two T-
shirts, one offering a suggestive sexual slo-
gan and the other bearing a slang reference
to male genitalia.

Plaintiffs take the position that by barring
this dress the defendants violated their right
to freedom of expression guaranteed under
the First Amendment.

The court's analysis begins with *Tinker v.
Des Moines Indep. Comm. School Dist.*, 393
U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).
In this case the court reversed a district
court decision upholding an Iowa high
school's prohibition against wearing black
armbands as a protest against the war in
Vietnam. Noting that students and teachers
do not "shed their constitutional rights to
freedom of speech or expression at the
schoolhouse gate," the Court held that the
school's action violated the plaintiff's First
Amendment rights. *Id.* at 506, 89 S.Ct. at

736. Significantly, however, Justice Fortas
observed that the "[p]roblem posed by the
present case does not relate to regulations of
the length of skirts or the type of clothing, to
hair style, or deportment." *Id.* at 507–08, 89
S.Ct. at 737.

The school officials banned and sought to
punish petitioners for a silent, passive ex-
pression of opinion, unaccompanied by any
disorder or disturbance on the part of peti-
tioners. There is here no evidence what-
ever of petitioners' interference, actual or
nascent, with the schools' work or of colli-
sion with the rights of other students to be
secure and to be let alone. Accordingly,
this case does not concern speech or action
that intrudes upon the work of the school
or the rights of other students.

*Tinker v. Des Moines Indep. Comm. School
Dist.*, 393 U.S. at 508, 89 S.Ct. at 737, 21
L.Ed.2d 731 (1969).

The *Tinker* holding was refined in *Bethel
School Dist. v. Fraser*, 478 U.S. 675, 106
S.Ct. 3159, 92 L.Ed.2d 549 (1986). In that
case the lower court had found a First
Amendment violation where school authori-
ties disciplined a high school student for
presenting a speech employing sexual meta-
phor at a high school assembly. The Court
reversed, criticizing the Court of Appeals, as
follows:

The marked distinction between the politi-
cal "message" of the armbands in *Tinker*
and the sexual content of respondent's
speech in this case seems to have been
given little weight by the Court of Appeals.
In upholding the students' right to engage
in a nondisruptive, passive expression of a
political viewpoint in *Tinker*, this Court
was careful to note that the case did "not
concern speech or action that intrudes
upon the work of the schools or the rights
of other students."

*Bethel School Dist. v. Fraser*, 478 U.S. at
680, 106 S.Ct. at 3163 (1986) (citation omit-
ted).

A careful reading of the majority opinion
in *Fraser* does not support plaintiffs' argu-

---

1. The parties to this action have waived their
   right to proceed before a district judge and con-
   sented to have this magistrate judge conduct any

and all further proceedings in the case, including
the trial, and order the entry of judgment. Fed.
R.Civ.P. 73, 28 U.S.C. § 636(c).

ment that its holding relies on the fact that the speech was given at a school assembly, and therefore involved "school sponsored" rather than "school tolerated" speech. Far more prominent in the decision is Chief Justice Burger's distinction between political and merely vulgar speech.

The key passage reads as follows:

We hold that petitioner School District acted entirely within its permissible authority in imposing sanctions upon Fraser in response to his offensively lewd and indecent speech. Unlike the sanctions imposed on the students wearing armbands in *Tinker*, the penalties imposed in this case were unrelated to any political viewpoint. The First Amendment does not prevent the school officials from determining that to permit a vulgar and lewd speech such as respondent's would undermine the school's basic educational mission. A high school assembly or classroom is no place for a sexually explicit monologue directed towards an unsuspecting audience of teenage students.

Significantly, in *Fraser*, Justice Brennan, though he made it clear that he found the speech itself far less offensive than the majority did, concurred in the judgment.

To my mind, the most that can be said about respondent's speech—and all that need be said—is that in light of the discretion school officials have to teach high school students how to conduct civil and effective public discourse, and to prevent disruption of school education activities, it was not unconstitutional for school officials to conclude, under the circumstances of this case, that respondent's remarks exceeded permissible limits.

*Id.* at 687–88, 106 S.Ct. at 3166–67 (Brennan, J., concurring).

The Supreme Court's most recent pronouncement in this area is *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988). In that case the district court found no violation of the First Amendment where a high school principal deleted certain pages of a school newspaper containing what he determined to be inappropriate material. The Eighth Circuit reversed the district court, and the Supreme Court, in a decision by Justice White, reversed the Court of Appeals, holding that the principal acted reasonably. The decision reaffirmed a school administrator's discretion to prohibit student speech that is inconsistent with the school's "basic educational mission" and emphasized again that the establishment of boundaries for proper speech in high schools rests with the school board rather than with the federal courts. *Id.* at 266–67, 108 S.Ct. at 567. While the distinction was somewhat buried in *Fraser*, Justice White's opinion in *Hazelwood* did contrast promotion with toleration of problematic student expression. *Id.* at 270–71, 108 S.Ct. at 569–70. At the same time the Court emphasized that the "decision in *Fraser* rested on the 'vulgar,' 'lewd,' and 'plainly offensive' character of a speech delivered at an official school assembly...." *Id.* at 271 n. 4, 108 S.Ct. at 570 n. 4.

At least one other court has wrestled with the issue of provocative dress. In *Broussard v. School Bd. of Norfolk*, 801 F.Supp. 1526 (E.D.Va.1992), the district court held that a school administrator's one-day suspension of a student for wearing a "Drugs Suck!" T-shirt did not violate the First Amendment. The judge concluded that the restriction was content-neutral, affecting the mode of communication and not the message itself. Plaintiffs concede that *Broussard* is on point but urge this court not to follow it.

Turning to the specifics of this case, the T-shirts in question bear the slogans: "Coed Naked Band; Do It To The Rhythm" and "See Dick Drink. See Dick Drive. See Dick Die. Don't Be A Dick."

A few preliminary concerns may be combed away. First, the defendants' goal here is not to prohibit books or class discussion regarding supposedly objectionable material or subjects. Cases such as *Keefe v. Geanakos*, 418 F.2d 359 (1st Cir.1969) and *Right to Read Defense Committee of Chelsea v. School Comm. of Chelsea*, 454 F.Supp. 703 (D.Mass.1978), have no more than a general relevance.

Second, this case involves minors ranging in age from as young as twelve years old. It

obviously does not address what these minors do outside school hours.

Third, the defendants' actions do not limit the content of any political or other substantive message. Except for the sexual innuendo, it is hard to discern any substance in the invocation to, "Do It To The Rhythm." As for the "Don't Be A Dick" T-shirt, plaintiffs do not, and could not, seriously suggest that the defendants are determined to suppress the message that students should not drink and drive. While perhaps not on all fours, this case bears far more resemblance to *Fraser* than *Tinker*.

Fourth, this case is not about the policy that this judge, if he were a member of the School Committee, might personally argue for. Plaintiffs' counsel forcefully contends that some T-shirts, apparently now tolerated at the high school by the defendants, offer more pungent phrases or depictions than the two at issue. Indeed, the record contains evidence that some of the administrators and teachers at South Hadley disagree, as individuals, about what dress might be preferable. As all parents know, however, line-drawing with adolescents is never simple; instances falling on one side or the other of the boundary will be forever subject to debate. The fact that the precise outline of what is acceptable may be a theme for disagreement among reasonable people does not suggest that *no* line may ever be drawn—much less, that the line is unconstitutional.[2]

Fifth, the T-shirts themselves are not horribly offensive. Particularly when compared to other influences twelve-year-olds encounter in today's world, they could be seen as fairly innocuous. The defendants do not allege that this clothing will provoke instant fisticuffs or an outbreak of nausea within the student body. However, as plaintiffs for their part recognize, the First Amendment does not require that school administrators wait before acting until they confront something truly sickening.[3]

For the defendants, the issue in its essence is the atmosphere they feel responsible for fostering at the school. On this point this court must move from the preliminaries to the center of the discussion.

Two justifications are offered for the defendants' decision: first, that the T-shirts' suggestive, and (to some) vulgar, mode of communication interferes with the school's basic educational mission, and, second, that the sexually-charged messages are demeaning to women. Again, it is important to emphasize that the First Amendment does not require the court to substitute its own judgment on these issues for that of the defendants, but only to determine based on the record whether these concerns are reasonable. Placing the issue in the context of the motion for temporary restraining order, the court must decide whether the defendants' action is so lacking in legitimacy as to make the likelihood of plaintiffs' ultimate success on the merits sufficiently high to justify emergency relief.

Having read the memoranda and the extensive affidavits filed by both sides, the court has concluded that it is unlikely that the plaintiffs will prove that the defendants' actions violated the First Amendment.

The affidavit of Paris Finley, an English and Social Studies teacher at the high school, carries powerful weight. This teacher notes (1) the numerous comments made to him by female students at the high school regarding sexual harassment; (2) his own policy of forbidding statements of a sexual nature in class, and (3) positive course evaluations from female students describing their enhanced ability to concentrate and learn in this atmosphere, and their unhappiness at other teachers who are not sensitive to this issue. In his class he requires the plaintiff Jonathan Pyle to cover his shirt.

---

2. The difficulty of establishing and maintaining boundaries in this area was highlighted by plaintiffs' counsel's hint that, while his present motion only deals with two T-shirts, he might at some future date apply for relief with regard to others. This raises the nightmarish potential of this court mired in the role of Dress Code Board of Appeals.

3. One of defendants' affiants, a social studies teacher, has testified that he sent home a student for wearing a shirt showing a couple engaged in sexual intercourse in a number of positions. Plaintiffs have not suggested that this decision contravened the First Amendment.

Other affidavits, though less specific, generally confirm defendants' goal of calming a sexually charged environment to enhance both the students' comfort level and their ability to learn.

Defendants' concerns cannot be brushed aside. A recent study commissioned by the American Association of University Women Educational Foundation in Washington and performed by Louis Harris and Associates—as reported in the *Boston Sunday Globe* of June 6, 1993 at page 1—revealed that 85 percent of girls and 76 percent of boys in eighth to eleventh grade in high school had been sexually harassed. *Time* magazine's May 24 issue highlights in its cover story the confusion suffered by high school age students at the constant bombardment of often inconsistent sexual messages. While the popular media may often distort complicated issues, no teacher or school administrator's concern about the effects of a sexually charged atmosphere on the welfare of students—and on their ability to learn—can be dismissed as trivial.

The issue on this case is *not* whether plaintiffs' First Amendment rights will be protected. The issue is what plaintiffs' First Amendment rights *are*, given the particular expression and the particular setting. If a school committee and administration decide to limit clothing with sexually provocative slogans, and diffuse somewhat an already highly charged atmosphere, in order to protect students and enhance the educational environment—even where the specific items banned may be relatively innocuous in today's world—the court is unlikely to conclude that this action violates the First Amendment.

The court makes this decision realizing that it may be a bitter pill for Jonathan and Jeffrey Pyle, and perhaps for some other students at the high school. Obviously, the ruling is not intended as criticism either of the plaintiffs' sincerity or of the excellent job their attorney did presenting their case. It is worth remembering that, whether this decision is correct or not, no other court system in the world today, and none that has existed in the history of the world, would take so much time to address the concerns of two high school students sent home over their T-shirts. Whatever the outcome, claims of violation of free expression are given the greatest attention, even when they arise in miniature, by this country, this judicial system and this court. Nevertheless, for the reasons stated, the motion must be denied. A separate order will issue.

### ORDER

For the reasons stated in the accompanying Memorandum, the Motion for Temporary Restraining Order is hereby DENIED.